UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
JOHN M. LARSON,                                             :
:
Plaintiff,                       :
:                   16 Civ. 245 (VEC)
vs.                             :
:
UNITED STATES OF AMERICA,                    :
:
Defendant.                       :
:
-------------------------------------------------------------x


**MEMORANDUM OF LAW OF DEFENDANT UNITED STATES OF AMERICA
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**


PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2769
Facsimile:  (212) 637-2786

*Attorney for Defendant*
*United States of America*


ANDREW E. KRAUSE
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................2

    A.    Larson's Criminal Conduct and the Tax Shelters at Issue ......................................2

    B.    Statutory Framework for Penalties Assessed Against Larson ................................3

    C.    Assessment of Tax Shelter Organizer/Promoter Penalties ....................................4

    D.    Adjustment of the Penalties Assessed Against Larson ...........................................5

    E.    Claim for Refund and Filing of the Complaint .......................................................6

ARGUMENT ..............................................................................................................7

    I.    LARSON'S TAX REFUND CLAIM SHOULD BE DISMISSED
        FOR LACK OF SUBJECT MATTER JURISDICTION .......................................7

        A.    Sovereign Immunity and the Legal Standard for a Motion to
            Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of
            Civil Procedure ............................................................................................7

        B.    Larson Has Not Complied with the "Full-Payment" Rule.........................8

            1.    Section 6707 Penalties Are Not Divisible ......................................9

            2.    The Due Process Clause of the Fifth Amendment Does Not
                Excuse Larson's Failure to Comply With the
                Full-Payment Rule .......................................................................12

II.     LARSON'S ADMINISTRATIVE PROCEDURE ACT AND MANDAMUS
        CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER
        JURISDICTION AND FAILURE TO STATE A CLAIM .................................14

        A.     Statutory Framework for Review of Agency Action Under
               the APA.................................................................................................15

        B.     Larson's APA Claims Should Be Dismissed Because
               28 U.S.C. 1346(a)(1) Provides a Specific Legal Remedy for
               the Relief He Seeks...............................................................................16

        C.     Larson Cannot Compel the IRS to Provide Information
               About Payments Allegedly Made by Jointly and Severally
               Liable Taxpayers...................................................................................18

III.    LARSON'S EIGHTH AMENDMENT CLAIM SHOULD BE
        DISMISSED .....................................................................................................20

CONCLUSION................................................................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Ardalan v. United States,*
    748 F.2d 1411 (10th Cir. 1984) ......................................................................................14

*Barnstone v. McKeever,*
    477 F. Supp. 108 (S.D. Tex. 1979) ................................................................................14

*Benzman v. Whitman*,
    523 F.3d 119 (2d Cir. 2008)...........................................................................................18

*Blakely v. United States,*
    276 F.3d 853 (6th Cir. 2002) .........................................................................................21

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988).......................................................................................................16

*Boynton v. United States,*
    566 F.2d 50 (9th Cir. 1977) ...........................................................................................10

*Chatman v. United States,*
    No. CV 14-1244 PA (MANx), 2014 U.S. Dist. LEXIS 150692
    (C.D. Cal. Oct. 22, 2014) ..............................................................................................17

*Clark Cnty. Bancorp. v. United States*,
    No. 13-632 (JEB), 2014 U.S. Dist. LEXIS 147984 (D.D.C. Sept. 19, 2014).............16, 17

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) ................................................................................16, 17

*Conyers v. Rossides,*
    558 F.3d 137 (2d Cir. 2009)...........................................................................................14

*Cooper v. United States*,
    No. 92-1962, 1993 U.S. App. LEXIS 6105 (4th Cir. Mar. 22, 1993) .............................13

*Curry v. United States,*
    774 F.2d 852, 854 (7th Cir. 1985) .................................................................................13

*Diversified Grp., Inc. v. United States,*
    123 Fed. Cl. 442 (Fed. Cl. 2015),
    *appeal docketed*, No. 16-1014 (Fed. Cir. Oct. 6, 2015)....................................9, 10, 11, 12

*Escaler v. U.S. Citizenship & Immigration Servs.,*
    582 F.3d 288 (2d Cir. 2009)...........................................................................................20

*Fidelity Bank v. United States,*
    616 F.2d 1181 (10th Cir. 1980) ........................................................10

*Flora v. United States,*
    357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960)........................................ *passim*

*Heckler v. Ringer,*
    466 U.S. 602 (1984)........................................................20

*Hercules Inc. v. United States,*
    516 U.S. 417 (1996)........................................................7

*Johnston v. Comm'r,*
    429 F.2d 804 (6th Cir. 1970) ........................................................14

*King v. Simpson,*
    189 F.3d 284 (2d Cir. 1999)........................................................20

*Korobkin v. United States,*
    988 F.2d 975 (9th Cir. 1993) ........................................................9, 10

*Lopes v. United States,*
    862 F. Supp. 1178 (S.D.N.Y. 1994)........................................................21

*Lunney v. United States,*
    319 F.3d 550 (2d Cir. 2003)........................................................14

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)........................................................7

*Marlow v. U.S. Dep't of Educ.,*
    820 F.2d 581 (2d Cir. 1987)........................................................16

*Millares Guiraldes de Tineo v. United States,*
    137 F.3d 715 (2d Cir. 1998)........................................................7, 8, 14

*Norton v. S. Utah Wilderness Alliance,*
    542 U.S. 55 (2004)........................................................15, 18, 20

*Pfaff v. United States,*
    No. 14-cv-03449-PAB-NYW, 2016 U.S. Dist. LEXIS 30844
    (D. Colo. Mar. 10, 2016)........................................................9, 10, 11, 12

*Pfaff v. United States,*
    989 F. Supp. 2d 301 (S.D.N.Y. 2013)........................................................2, 3, 9

*Robinson v. Overseas Mil. Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994).............................................................................7, 20

*Rocovich v. United States*,
    933 F.2d 991 (Fed. Cir. 1991)...................................................................9, 11, 13

*Ross v. United States*,
    460 F. Supp. 2d 139 (D.D.C. 2006) ...................................................................18

*Ruckelshaus v. Sierra Club*,
    463 U.S. 680 (1983)..............................................................................................8

*SEC v. Credit Bancorp, Ltd.*,
    297 F.3d 127 (2d Cir. 2002)...............................................................................18

*Satterly v. United States*,
    No. 81-CV-448, 1982 U.S. Dist. LEXIS 10664 (N.D.N.Y. Feb. 10, 1982) ......14

*Sharkey v. Quarantillo*,
    541 F.3d 75 (2d Cir. 2008)............................................................................14, 15

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998).................................................................................7

*Smith v. Shulman*,
    333 Fed. App'x 607 (2d Cir. 2009)......................................................................8

*United States ex rel. Perler v. Papandon*,
    331 F.3d 52 (2d Cir. 2003).................................................................................10

*United States v. Forma*,
    42 F.3d 759 (2d Cir. 1994)...................................................................................8

*United States v. Pfaff*,
    407 Fed. App'x 506 (2d Cir. 2010).....................................................................2, 9

*United States v. Powell*,
    Number CV 99-224-TUC-RCC, 2001 U.S. Dist. LEXIS 3280
    (D. Ariz. Feb. 22, 2001) .....................................................................................14

*United States v. Sherwood*,
    312 U.S. 584 (1941)..............................................................................................8

## STATUTES

5 U.S.C. § 551 ...................................................................................................................2, 15

5 U.S.C. § 701 ..........................................................................................................................2

5 U.S.C. § 702 ...................................................................................................................15, 18

5 U.S.C. § 704 ......................................................................................................15, 16, 17, 18

5 U.S.C. § 706(1) ..............................................................................................................15, 18, 19

26 U.S.C. § 6103(h)(4) .............................................................................................................19

26 U.S.C. § 6111 (1997-2000) ..................................................................................3, 4, 11, 12

26 U.S.C. §§ 6211-6213 ...........................................................................................................13

26 U.S.C. § 6672 .....................................................................................................................10

26 U.S.C. § 6694(c) ...................................................................................................................8

26 U.S.C. § 6700 .....................................................................................................................10

26 U.S.C. § 6703(c) ...................................................................................................................8

26 U.S.C. § 6707 (1997-2000) ........................................................................................ *passim*

26 U.S.C. § 7213 .....................................................................................................................19

26 U.S.C. § 7421 .....................................................................................................................18

26 U.S.C. § 7431 .....................................................................................................................19

26 U.S.C. § 7422 ..........................................................................................................14, 16, 17

26 U.S.C. § 7430 .......................................................................................................................2

28 U.S.C. § 1346(a)(1) ...............................................................................................8, 15, 16, 17

28 U.S.C. § 1361 ..................................................................................................................7, 20

28 U.S.C. § 2201(a) .................................................................................................................18

**REGULATIONS**

79 Fed. Reg. 44,282 (2014) ...........................................................................................19

Treas. Reg. § 301.6111-1T (1997-2000) ..............................................................11, 12

Treas. Reg. § 301.6707-1T (1984-2014) .......................................................................19

**OTHER**

Attorney General's Manual on the Administrative Procedure Act...................................15

I.R.S. Notice 2000-44, 2000-2 C.B. 255, 2000 WL 1138430 .........................................3

I.R.S. Notice 2001-45, 2001-2 C.B. 129, 2001 WL 847824 ...........................................3

Defendant United States of America ("United States" or "Government"), on behalf of the Internal Revenue Service ("IRS"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff John M. Larson ("Larson") was convicted in 2009 of crimes relating to his creation and implementation of fraudulent tax shelter vehicles. The IRS later assessed civil penalties against Larson for his failure to register two such shelters, and the outstanding balance of those penalties is more than $60 million. Larson paid only a fraction of the penalties, but now seeks a refund of all monies he has paid, as well as an abatement of the remaining penalties. Because he has not fully paid the penalty for either of the two shelters, however, he has not satisfied the jurisdictional requirements for a tax refund suit, and he has not identified any other viable basis for this court to exercise subject matter jurisdiction over this action.

First, by paying only a fraction of his outstanding penalty liabilities, Larson has not come close to satisfying the requirement—clearly articulated in *Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960)—that a taxpayer must fully pay the challenged tax liabilities or penalties prior to filing a tax refund action in district court. None of the limited exceptions to the full-payment rule apply to Larson: there is no statutory exclusion to the rule for penalties assessed under 26 U.S.C. § 6707; these penalties are not "divisible" for purposes of satisfying the full-payment rule; and there are no "hardship" exceptions to the rule based on a taxpayer's alleged inability to pay the outstanding balances owed.

Second, Larson cannot avoid his non-compliance with the full-payment rule by reframing his refund claim as an allegation that the IRS violated the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, 701 *et seq.* ("APA").  A final agency action is only reviewable under the APA if the party challenging the action has no other adequate remedy in a court, and the availability of a tax refund suit—the only appropriate means by which to raise a claim for refund—precludes APA review of the IRS's penalty assessment.  Moreover, even if Larson's claim that the IRS failed to act by refusing to provide him information about other taxpayers can be distinguished from his core tax refund cause of action, this claim also fails under both the APA and the federal mandamus statute because Larson does not identify any specific statutory or regulatory language that compels the actions that the IRS allegedly failed to take.

Third, Larson cannot salvage subject matter jurisdiction for his complaint by alleging a purported cause of action under the Eighth Amendment to the United States Constitution.  There is no private right of action against the United States under the Eighth Amendment, and Congress has not waived the Government's sovereign immunity from lawsuits based on constitutional claims.  Accordingly, and as set forth in greater detail below, Larson's complaint should be dismissed in its entirety.[1]

## FACTUAL BACKGROUND

### A.    Larson's Criminal Conduct and the Tax Shelters at Issue

In 2009, Larson was convicted of crimes relating to his creation and implementation of fraudulent tax shelter vehicles.  *See Pfaff v. United States*, 989 F. Supp. 2d 301, 303 (S.D.N.Y. 2013); *United States v. Pfaff*, 407 Fed. App'x 506, 508-11 (2d Cir. 2010).  The superseding indictment in Larson's criminal case identified specific fraudulent tax shelters, including those—

---

[1] If the court grants the Government's motion to dismiss as to Larson's substantive claims, his fifth cause of action—seeking attorney's fees as the "prevailing party" pursuant to 26 U.S.C. § 7430, *see* Compl. ¶¶ 54-56—should be dismissed as well.

the Foreign Leveraged Investment Program ("FLIP"); Offshore Portfolio Investment Strategy ("OPIS"); and Bond Linked Issue Premium Structure ("BLIPS")—that gave rise to the assessed penalties at issue in this action.  *See Pfaff*, 989 F. Supp. 2d at 303; Compl. ¶ 7.  In general, these shelters were designed to look like legitimate transactions, "but were in fact unlawful devices designed to generate tax deductions."  *Pfaff*, 989 F. Supp. 2d at 303; *see* Declaration of Michael A. Halpert, dated April 28, 2016 ("Halpert Decl.") ¶¶ 4-6.

Although the FLIP and OPIS tax shelters were marketed at slightly different times and to different individuals, in all material respects, FLIP and OPIS were the same.  Halpert Decl. ¶ 5. FLIP and OPIS both were designed to generate substantial capital losses using an entity created in the Cayman Islands.  *Id.*  The IRS describes this type of shelter as a "basis shifting" tax shelter and issued Notice 2001-45 condemning it.  *Id.*; *see* I.R.S. Notice 2001-45, 2001-2 C.B. 129, 2001 WL 847824.  The BLIPS tax shelter was designed to generate "paper" capital and ordinary losses through a series of pre-arranged transactions that involved the client purportedly borrowing money from one of four banks.  Halpert Decl. ¶ 6.  The IRS describes this type of shelter as an improper "tax avoidance using artificially high basis" shelter and issued Notice 2000-44 condemning it.  *Id.*; *see* I.R.S. Notice 2000-44, 2000-2 C.B. 255, 2000 WL 1138430.

**B.    Statutory Framework for Penalties Assessed Against Larson**

From 1997-2000, the Internal Revenue Code required tax shelter organizers to register their tax shelters with the IRS "not later than the day on which the first offering for sale" occurred.  26 U.S.C. § 6111(a) (1997-2000).  The IRS was authorized to assess a penalty when a person required to register a tax shelter failed to do so.  26 U.S.C. § 6707(a)(1)(A) (1997-2000) ("Section 6707").[2]  The penalty for failure to register a tax shelter required to be registered under

---

[2] All references to Section 6707 in this memorandum of law are to the pre-2004 version of that statute, because that is the statutory language that was in effect when the underlying

26 U.S.C. § 6111(a) was fixed at "an amount equal to the greater of (A) 1 percent of the aggregate amount invested in such tax shelter, or (B) $500."  26 U.S.C. § 6707(a)(2) (1997-2000).

### C.      Assessment of Tax Shelter Organizer/Promoter Penalties

According to the complaint, the IRS notified Larson by letter dated February 15, 2011, that it considered him to be a "tax shelter organizer with respect to Notice 2000-44 and 2001-45 transactions within the meaning of Internal Revenue Code Section 6111(e)."  Compl. ¶ 6.  The February 15, 2011, letter further stated that Larson had "a duty to register the Notice 2000-44 and 2001-45 transactions pursuant to section 6111(a) and failed to do so," and that Larson therefore was subject to tax shelter promoter/organizer penalties under Section 6707.  *Id.*  The IRS calculated two separate Section 6707 penalties for Larson: one for his failure to register the FLIP/OPIS tax shelter, and one for his failure to register the BLIPS tax shelter.  *See* Halpert Decl. ¶ 4; Compl. ¶ 7.

As alleged in the complaint, in a letter dated March 18, 2011, the IRS notified Larson that it proposed to assess penalties personally against him under Section 6707.  Compl. ¶ 12.  Larson alleges that he filed with the IRS Appeals Office a request for reconsideration of the March 18, 2011, IRS letter, along with an appeal of the findings of the IRS examination.  *Id.* ¶ 15.

On August 1, 2011, the IRS assessed two separate Section 6707 penalties, totaling $160,232,026, against Larson for his failure to register the FLIP/OPIS and BLIPS shelters.  Halpert Decl. ¶ 4; Compl. ¶ 16.  The FLIP/OPIS penalty amounted to one percent of the aggregate amount invested in the FLIP/OPIS shelter in calendar years 1997 through 1999, and the BLIPS penalty amounted to one percent of the aggregate amount invested in the BLIPS

conduct that gave rise to the penalties assessed against Larson—namely, his failure to register the FLIP/OPIS and BLIPS tax shelters—occurred.

shelter in calendar years 1999 and 2000.  Halpert Decl. ¶ 4; *see* 26 U.S.C. § 6707(a)(2) (1997-2000).  Although each penalty is, for administrative purposes, divided across multiple years (1997-1999 for FLIP/OPIS, and 1999-2000 for BLIPS), each one is a single penalty based on a single event—the failure to register the shelter.  Halpert Decl. ¶ 4; *see* Compl. ¶¶ 9, 20.

### D.    Adjustment of the Penalties Assessed Against Larson

In 2012, the IRS reduced the amount owed on the August 1, 2011, penalty assessments because other taxpayers who were jointly and severally liable with Larson for some of the penalties made payments towards their joint obligations.  Halpert Decl. ¶ 7; *see* Compl. ¶ 20.  These adjustments, which are reflected on Larson's account transcripts, resulted in credits totaling $92,570,667.  *Id.*  Larson alleges that he was not provided with "any information about which other penalty payments formed the basis for the penalty reduction or how these payments were applied as between the two transactions, FLIP/OPIS and BLIPS."  Compl. ¶ 21.  Nevertheless, he alleges, upon information and belief, that the adjustments were based on "penalty payments made by KPMG, HVB Bank, Sidley Austin and/or Deutsche Bank (and possibly others) for the same joint and several [Section] 6707 liability" assessed against Larson.  *Id.* ¶ 22.  According to Larson, the United States Department of Justice and the IRS "have publicly announced that settlements with KPMG, HVB Bank, Sidley Austin and Deutsche Bank have resulted in payments by those entities to the United States exceeding $295,000,000 for promoter penalty liability under [Section] 6707."  *Id.* ¶ 23.  Larson alleges, upon information and belief, that "these payments were, in whole or part, payments for the promoter liability arising from the same FLIP/OPIS and BLIPS transactions that are at issue in this case."  *Id.*  The complaint states that the IRS has refused repeated requests from Larson "for documentation or explanation about penalty payments made by other entities."  *Id.* ¶ 25.

Additional adjustments have been made in the penalty amounts assessed against Larson.

Among other things, Larson made a payment of $1,432,735, which he designated toward the

portion of the BLIPS penalty related to investments in calendar year 1999.  *See* Compl. ¶ 29 &

Ex. A at 1, 3.  Larson's account transcripts and current outstanding penalty liability reflect this

payment.  Halpert Decl. ¶ 7.  Furthermore, the IRS received an additional payment of $4,250,000

from taxpayers who were jointly and severally liable with Larson for some of the penalties; this

payment, which also reduced the portion of the BLIPS penalty related to investments in calendar

year 1999, was posted to Larson's account in March 2016.  *Id.* ¶ 8.  Any payments that the IRS

receives in the future from others who are jointly and severally liable for some of the penalties

with Larson will be posted to his account.  *Id.*

In total, Larson still owes $1,435,052 for his Section 6707 penalty for failure to register

the FLIP/OPIS tax shelter with the IRS ($0 for investments in calendar year 1997; $1,203,779

for investments in calendar year 1998; and $231,273 for investments in calendar year 1999).  *Id.*

¶ 9.  Larson also owes $60,098,975 for his Section 6707 penalty for failure to register the BLIPS

tax shelter ($34,862,729 for investments in calendar year 1999; and $25,236,246 for investments

in calendar year 2000).  *Id*.  Larson alleges that he does not have the ability to pay the full

amount of the penalties.  Compl. ¶ 28.

### E.    Claim for Refund and Filing of the Complaint

The complaint alleges that at the time Larson made his $1,432,735 payment, he also

submitted to the IRS a Form 843 Claim for Refund and Request for Abatement, which was

denied by the IRS by letter dated May 12, 2015.  Compl. ¶¶ 30-31.  Larson filed this action on

January 13, 2016, to (i) recover a refund of his penalty payment and to seek abatement of the

penalties in their entirety, *id.* ¶¶ 34-38; (ii) obtain relief under the APA, purportedly because the

IRS's assessment of the Section 6707 penalties and the denial of his claim for refund were final agency actions that were arbitrary, capricious, and without sound basis in fact or law, *see id.* ¶¶ 40, 42; (iii) challenge the penalty as a "punitive fine" under the Eighth Amendment to the United States Constitution, *id.* ¶¶ 45-47; and (iv) compel the IRS, pursuant to the APA and/or the federal mandamus statute, 28 U.S.C. § 1361, to provide him with information about the amounts of the Section 6707 penalties that it has collected from all co-promoters, *id.* ¶¶ 49-53.

## ARGUMENT

## I.     LARSON'S TAX REFUND CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

### A.     Sovereign Immunity and the Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff carries the burden of establishing that the Court has subject matter jurisdiction to adjudicate his complaint. *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). When a district court lacks the statutory or constitutional authority to adjudicate a claim, that claim should be dismissed. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *See id.* Though a court must "accept as true all material factual allegations in the complaint," for purposes of assessing jurisdiction, it also must refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (internal citation omitted).

In a suit against the United States, sovereign immunity bars this Court's jurisdiction unless the government has waived that immunity by congressional enactment. *See Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996); *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 719 (2d Cir. 1998). Any such waiver of sovereign immunity must be strictly construed

7

in favor of the government.  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983); *Millares Guiraldes de Tineo*, 137 F.3d at 719.  If the government has not waived its sovereign immunity, or if the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist.  *See United States v. Sherwood*, 312 U.S. 584, 586-87 (1941); *United States v. Forma*, 42 F.3d 759, 763 (2d Cir. 1994).  Larson has failed to satisfy the jurisdictional prerequisites for filing a tax refund suit, and his first cause of action should be dismissed for lack of subject matter jurisdiction.

### B.      Larson Has Not Complied with the "Full-Payment" Rule

United States district courts may adjudicate suits "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority . . . ."  28 U.S.C. § 1346(a)(1).  But taxpayers must satisfy certain requirements in order to bring such a suit—jurisdiction in tax refund suits is limited to cases in which the plaintiff has fully paid the tax liabilities or penalties challenged prior to filing his action in district court.  *See Flora*, 362 U.S. at 150-51; *Smith v. Shulman*, 333 Fed. App'x 607, 608 (2d Cir. 2009); *Forma*, 42 F.3d at 763 ("[W]hile the United States has provided for suits against the Government to recover taxes alleged to have been overpaid or wrongfully assessed and collected, it has also developed a series of procedural hurdles that taxpayers must surmount in order to maintain such suits.").  Larson has not fully paid the Section 6707 penalties that he seeks to challenge, *see* Halpert Decl. ¶ 9; Compl. ¶ 28, and therefore may not proceed with this suit.

There are limited exceptions to the full-payment rule, none of which apply to penalties assessed under Section 6707.  For example, Congress has authorized refund suits for certain penalties even where the taxpayer has not made full payment.  *See* 26 U.S.C. §§ 6694(c), 6703(c) (permitting refund suits for certain penalties upon payment of 15 percent of assessed penalties).

No such statutory waiver of the full-payment rule, however, exists for the Section 6707 penalties at issue here.

Courts also have found that for taxes considered to be "divisible," the taxpayer need only pay a portion of the tax before instituting suit. *See Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991). Yet the only two courts to have considered the applicability of the full-payment rule to Section 6707 assessments have both found—in decisions issued within the past year—that Section 6707 penalties are not exempt from the rule, and must be paid in full before a taxpayer can initiate a refund action. *See Pfaff v. United States*, No. 14-cv-03449-PAB-NYW, 2016 U.S. Dist. LEXIS 30844, *5-10 (D. Colo. Mar. 10, 2016)[3]; *Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 456 (Fed. Cl. 2015), *appeal docketed*, No. 16-1014 (Fed. Cir. Oct. 6, 2015).

### 1.    Section 6707 Penalties Are Not Divisible

As detailed by both the *Pfaff* and *Diversified Group* courts, Section 6707 penalties are not analogous to the types of taxes that are considered "divisible" for purposes of the full-payment rule. *See Pfaff*, 2016 U.S. Dist. LEXIS at *5-*10; *Diversified Grp.*, 123 Fed. Cl. at 455-56. The exception to the full-payment rule for divisible assessments is a "narrow" one, *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993), and should not be extended to include Section 6707 tax shelter promoter penalties.

"A tax or penalty is divisible when 'it represents the aggregate of taxes due on multiple transactions.'" *Diversified Grp.*, 123 Fed. Cl. at 451 (quoting *Rocovich,* 933 F.2d at 995). Divisible "taxes or penalties . . . are seen as merely the sum of several independent assessments

---

[3] Robert Pfaff, the plaintiff in the *Pfaff* action, was one of Larson's co-defendants in his criminal proceedings, *see Pfaff v. United States*, 989 F. Supp. 2d 301, 303 (S.D.N.Y. 2013); *United States v. Pfaff*, 407 Fed. App'x 506, 508 (2d Cir. 2010), and the penalties at issue in his civil case in Colorado also involved the FLIP/OPIS and BLIPS tax shelters, *see Pfaff v. United States*, 2016 U.S. Dist. LEXIS at *1 n.1.

triggered by separate transactions.  In such cases, the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions." *Korobkin*, 988 F.2d at 976.  A tax or penalty that arises from a single event, however, is not divisible. *Diversified Grp.*, 123 Fed. Cl. at 451, 455.

One type of divisible tax is an excise tax, which is assessed on a per item basis, and can therefore be divided into a tax on each transaction or event.  *See Flora,* 362 U.S. at 175 n.38; *United States ex rel. Perler v. Papandon,* 331 F.3d 52, 53 & n.1 (2d Cir. 2003); *Diversified Grp.*, 123 Fed. Cl. at 451.  Similarly, penalties assessed pursuant to 26 U.S.C. § 6672 for failure to remit employment taxes collected by employers on behalf of the government are considered divisible, because the penalty is the "cumulation of separable assessments for each of the employees involved"; suit is therefore permitted "after payment of one or more employee's taxes." *Fidelity Bank v. United States*, 616 F.2d 1181, 1182, n. 1 (10th Cir. 1980); *see Boynton v. United States,* 566 F.2d 50, 52 (9th Cir. 1977).  In addition, certain penalties assessed against promoters of abusive tax shelters are considered divisible because the statutory language describing the penalty makes clear that the penalty calculation is to be made based on individual sale transactions, and not the aggregate investment in the tax shelter as a whole.  *See* 26 U.S.C. § 6700; *Pfaff*, 2016 U.S. Dist. LEXIS at \*9 (distinguishing 26 U.S.C. § 6700 penalties from Section 6707 penalties); *Diversified Grp.,* 123 Fed. Cl. at 453-55 (same) (describing penalty assessed under 26 U.S.C. § 6700 as "wholly distinct from a penalty arising under [Section 6707]").

Tax shelter promoter penalties under Section 6707 are not comparable to any of these examples of divisible taxes, as Section 6707 penalties are not divisible by participant or based on a particular customer's individual investment.  A Section 6707 penalty is assessed against "a

person who is required to register a tax shelter," but fails to do so.  26 U.S.C. § 6707(a)(1)(A) (1997-2000); *see Pfaff*, 2016 U.S. Dist. LEXIS at *7.  The registration requirement of 26 U.S.C. § 6111—the violation of which subjects an individual to Section 6707 penalties—"does not require registration of each individual transaction, investment, or sale."  *Pfaff*, 2016 U.S. Dist. LEXIS at *7; 26 U.S.C. § 6111(a)(1) (1997-2000); Treas. Reg. § 301.6111-1T at A-47 (1997-2000).  Rather, "a violation of 26 U.S.C. § 6111 . . . is predicated on a single event, namely, failing to register the underlying tax shelter."  *Pfaff*, 2016 U.S. Dist. LEXIS at *7; *id.* at *9 ("The activity giving rise to liability under [Section] 6707 is the single act of failing to register a tax shelter."); *Diversified Grp.*, 123 Fed. Cl. at 451 (plaintiffs were assessed the Section 6707 penalty "for failure to register their tax shelter—a single act"); *Rocovich*, 933 F.2d at 995 (finding that the estate tax cannot be considered divisible because it "arises from a single event"). "Logically, divisibility cannot apply because individual transactions that participate in a tax shelter are not registered.  There is no [Section] 6707 penalty imposed on each transaction, in the way that a separate tax is imposed on each sale item in the context of an excise tax, or for each employee within the realm of payroll taxes."  *Diversified Grp.*, 123 Fed. Cl. at 455; *see Pfaff*, 2016 U.S. Dist. LEXIS at *9 (the Section 6707 penalty "involves a single assessment on the aggregate amount of an unregistered tax shelter.").

Moreover, unlike the types of taxes that courts have found to be "divisible," the Section 6707 penalty is calculated based on the aggregate amount of the investment in the tax shelter as a whole, not based on individual sales of interests in the shelter.  *See* 26 U.S.C. § 6707(a)(2) (1997-2000).  The fact that the "aggregate amount invested in the tax shelter" is, necessarily, the sum of various underlying transactions, does not make the Section 6707 penalty divisible, because the "aggregated investments . . . are part of a single tax shelter."  Treas. Reg. §

11

301.6111-1T (1997-2000) at A-48; *see Pfaff*, 2016 U.S. Dist. LEXIS at *8 ("Consideration of underlying transactions in order to determine the amount of a penalty does not render the [Section] 6707 penalty divisible."); *Diversified Grp.*, 123 Fed. Cl. at 455 (the Section 6707 penalty "is not susceptible to divisibility" because it "is not assessed based upon the sum of transactions that participate in the tax shelter.  To the contrary, the penalty is levied for the failure to register a tax shelter with the IRS—a singular act.").

The IRS assessed Section 6707 penalties against Larson based on two individual violations of 26 U.S.C. § 6111: his failure to register the FLIP/OPIS tax shelter, and his failure to register the BLIPS tax shelter.  *See* Halpert Decl. ¶ 4; Compl. ¶ 7.  While Larson made a payment of $1,432,735 toward the BLIPS penalty, a balance of more than $60,000,000 remains unpaid, and a balance of more than $1,400,000 remains unpaid on the FLIP/OPIS penalty. Halpert Decl. ¶ 9.  This Court lacks jurisdiction to review Larson's challenge to either penalty so long as these balances remain outstanding, and Larson's first claim—for refund and abatement of his Section 6707 penalties—should be dismissed for this reason alone.

### 2.    The Due Process Clause of the Fifth Amendment Does Not Excuse Larson's Failure to Comply With the Full-Payment Rule

Although Larson does not directly assert a claim pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, the complaint lists the Fifth Amendment as a purported basis for jurisdiction in this action, Compl. ¶ 3, and he has asserted that the Due Process Clause affords him "the right to meaningful review of the assessed penalty," *see* Dkt. No. 21 at 2.  But any due process argument here is without merit.  The full-payment rule articulated in *Flora* still applies to Larson even though he could not seek relief in the United States Tax Court and allegedly cannot pay the full amount of the penalties assessed against

him—there are no "hardship" exceptions to the full-payment rule, and none should be created for Larson's benefit.

Unlike many types of taxes, Section 6707 penalties are considered immediately assessable—individuals do not receive a "notice of deficiency" for such penalties, and have no ability to petition the United States Tax Court for review of their penalty assessments outside of collection due process procedures under sections 6320 and 6330 of the Internal Revenue Code. *Compare* 26 U.S.C. § 6707 (1997-2000) *with* 26 U.S.C. §§ 6211-6213 (concerning tax liabilities for which notices of deficiency are required); *see* Compl. ¶ 26-27 & Ex. B (describing the options available to Larson). But this fact does not make the Section 6707 penalty divisible or otherwise create an exception to the full-payment rule.

In *Curry v. United States*, the Seventh Circuit was asked to carve out a "hardship exception" to the full payment rule because, like Larson, plaintiff was unable to seek Tax Court review and was unable to pre-pay the tax to satisfy the jurisdictional requirements for a refund suit in district court. *See* 774 F.2d 852, 854-55 (7th Cir. 1985). In "declin[ing] the invitation to carve out a 'hardship' exception to the *Flora* rule," however, the Seventh Circuit concluded that any hardship experienced by the taxpayers was "a matter for legislative, not judicial remedy" and that a hardship exception would "endanger the 'public purse' and disrupt the smooth functioning of the tax system, two tax policy considerations that led the *Flora* Court to adopt the prepayment rule in the first place." *Id.*; *see also Cooper v. United States*, No. 92-1962, 1993 U.S. App. LEXIS 6105, *2-3 (4th Cir. Mar. 22, 1993) (holding that *Flora* pre-payment rule is not limited to cases that may also be pursued in the Tax Court); *Rocovich*, 933 F.2d at 995 (same).

Framing the request for an exception to the *Flora* rule as a constitutional issue does not change this analysis. Various courts have recognized that while the full-payment requirement

13

imposes a burden on taxpayers, it does not constitute a deprivation of fundamental fairness under the Fifth Amendment. *See Johnston v. Comm'r*, 429 F.2d 804, 806 (6th Cir. 1970); *Ardalan v. United States*, 748 F.2d 1411, 1414 (10th Cir. 1984); *United States v. Powell*, No. CV 99-224-TUC-RCC, 2001 U.S. Dist. LEXIS 3280, *29 (D. Ariz. Feb. 22, 2001); *Satterly v. United States*, No. 81-CV-448, 1982 U.S. Dist. LEXIS 10664, *8 (N.D.N.Y. Feb. 10, 1982); *Barnstone v. McKeever*, 477 F. Supp. 108, 111 (S.D. Tex. 1979). Put simply, the *Flora* full-payment rule is not qualified by the size of the outstanding tax obligation or the taxpayer's ability to pay. To find otherwise would undermine a bright-line jurisdictional rule—articulated by the Supreme Court and enforced consistently by courts throughout the United States—in favor of a subjective standard that would require extensive fact-finding, and would contravene the long-established principle that waivers of sovereign immunity and their conditions must be strictly applied against claimants. *See Millares Guiraldes de Tineo*, 137 F.3d at 719.

## II.   LARSON'S ADMINISTRATIVE PROCEDURE ACT AND MANDAMUS CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

"The APA is not an independent grant of subject matter jurisdiction." *Lunney v. United States*, 319 F.3d 550, 557 (2d Cir. 2003). While the statute waives the federal government's sovereign immunity in certain circumstances, the waiver is limited, and does not apply to the extent an agency's action is not subject to judicial review under the APA. *See id.* at 558.[4] APA review is not available to Larson for purposes of challenging the IRS's assessment of the Section 6707 penalty because the tax refund suit procedures of 26 U.S.C. § 7422 and 28 U.S.C.

---

[4] The Second Circuit has observed in dicta that it is "uncertain in light of recent Supreme Court precedent whether [certain] threshold limitations [of the APA] are truly jurisdictional or are rather essential elements of the APA claims for relief." *See Sharkey v. Quarantillo*, 541 F.3d 75, 87 (2d Cir. 2008). Regardless, even if Larson's APA claims were to be analyzed under the rubric of Rule 12(b)(6) of the Federal Rules of Civil Procedure, they still should be dismissed. *See Conyers v. Rossides*, 558 F.3d 137, 143 n.8 (2d Cir. 2009).

§ 1346(a)(1) are the Congressionally-designated mechanism for review of this type of agency action.  Moreover, to the extent that Larson's challenge to the IRS's purported "failure" to provide him with certain information can be construed as falling outside the scope of a tax refund action, that "failure to act" claim is also deficient and should be dismissed.

### A.    Statutory Framework for Review of Agency Action Under the APA

The APA authorizes judicial review of federal agency action for any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Final agency actions are only subject to judicial review, however, when "there is no other adequate remedy in a court" for the challenger.  *See* 5 U.S.C. § 704.

An "agency action" under the APA may include a "failure to act."  5 U.S.C. § 551(13); *see Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62-63 (2004).  Section 706(1) of the APA provides relief for an agency's failure to act by permitting reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see Norton*, 542 U.S. at 62.  When a plaintiff challenges an agency's failure to act, the challenge can proceed under the APA "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton*, 542 U.S. at 64 (emphasis in original); *see Sharkey*, 541 F.3d at 89 n.13.  Even then, a court is empowered only to "compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act.'"  *Norton*, 542 U.S. at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)) (emphasis added by *Norton* Court).

**B.      Larson's APA Claims Should Be Dismissed Because 28 U.S.C. 1346(a)(1) Provides a Specific Legal Remedy for the Relief He Seeks**

Larson seeks to evade the jurisdictional requirement of the full-payment rule by using the APA as a vehicle to pursue his tax refund suit against the IRS, but the APA is not available as an alternative to a tax refund suit in this context.  A final agency action is only reviewable if the party challenging the action has "no other adequate remedy in a court."  5 U.S.C. § 704.  The APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures," because review under the APA is not meant to "duplicate existing procedures for review of agency action."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (footnote omitted); *see Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 n.3 (2d Cir. 1987) ("We also note that the APA further restricts judicial review to those agency actions for which 'there is no other adequate remedy in court.'") (quoting 5 U.S.C. § 704).  "An existing review procedure will therefore bar a duplicative APA claim so long as it provides adequate redress."  *Clark Cnty. Bancorp. v. United States*, No. 13-632 (JEB), 2014 U.S. Dist. LEXIS 147984, *23 (D.D.C. Sept. 19, 2014).

Here, Congress plainly has established a specific judicial procedure to review the IRS's handling of penalty assessments—a tax refund suit pursuant to 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1).  *See Clark Cnty.* at *24-25 ("It is clear . . . that Congress intended the review of tax refund determinations to proceed through a specific administrative framework."); *Cohen v. United States*, 650 F.3d 717, 739 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("the tax refund suit is a statutorily designed judicial procedure for a taxpayer to wrangle with the IRS over taxes, refunds, or the legality of IRS tax collection or refund practices").[5]  Indeed, Larson's

---

[5] In *Cohen*, the D.C. Circuit found that APA review was available for plaintiff's claims regarding the adequacy of refund procedures for a telephone excise tax.  650 F.3d at 724-27.  But the majority was careful to explain that unlike a tax refund action, the *Cohen* suit "does not seek

own complaint effectively acknowledges this reality, as his first cause of action is plead pursuant to this statutory scheme.  The very availability of this cause of action forecloses APA review. *See Clark Cnty.*, 2014 U.S. Dist. LEXIS at *25-26; *see also Chatman v. United States*, No. CV 14-1244 PA (MANx), 2014 U.S. Dist. LEXIS 150692, at *8 (C.D. Cal. Oct. 22, 2014) (APA review unavailable pursuant to 5 U.S.C. § 704 because plaintiff would have an "adequate remedy at law if he elected to file a refund suit or an administrative claim for refund").

The complaint alleges that if this court finds that it lacks jurisdiction over Larson's tax refund cause of action because of his failure to adhere to the full-payment rule, then Larson "will not have an adequate remedy to challenge the IRS's final agency actions."  Compl. ¶ 43.  But the fact that Larson has not availed himself of the "remedy at law" does not mean that the remedy itself was not an "adequate" one.  *See* 5 U.S.C. § 704.  Indeed, in both *Clark County* and *Chatman*, the courts found that APA review was not available because the plaintiffs should have—but did not—pursue their claims under the tax refund procedures of 26 U.S.C. § 7422(a) and 28 U.S.C. 1346(a)(1); the question of whether either plaintiff had the means necessary to comply with the full-payment rule was immaterial to the analysis.  Congress has determined the appropriate procedures for bringing the type of challenge that Larson seeks to pursue here, and the plain meanings of the relevant statutory provisions do not change based on whether a particular plaintiff does or does not have sufficient funds to satisfy his or her outstanding tax liabilities.  To permit APA review of Larson's penalty assessment based on his alleged inability

---

to restrain the assessment or collection of any tax. The IRS previously assessed and collected the excise tax at issue.  The money is in the U.S. [T]reasury; the legal right to it has been previously determined."  *Id.* at 725. Additionally, the majority held that the outcome of the claims in *Cohen* "[would] not directly affect the disposition of any federal tax. Even if Appellants w[o]n, it [did] not follow that they [were] entitled to a tax refund. Whatever Appellants ultimately hope[d] to achieve, [*Cohen* was] not a refund suit."  *Id.* at 728.  Larson's claim here is nothing like that of the *Cohen* plaintiffs—the outcome of the APA review would directly affect the disposition of a federal tax, and Larson does claim that he is entitled to a refund.  This case plainly *is* a tax refund suit.

17

to fulfill the jurisdictional requirements for a tax refund suit would frustrate this

Congressionally-established framework, and Larson should not be permitted to manipulate the

requirements of subject matter jurisdiction in this way.[6]

### C.    Larson Cannot Compel the IRS to Provide Information About Payments Allegedly Made by Jointly and Severally Liable Taxpayers

Larson's attempt to compel the IRS to produce certain information regarding other

taxpayers is simply a different avenue to attack the IRS's underlying assessment of the Section

6707 penalty, and should be dismissed for the reasons set forth in Section II.B, *supra*.  But to the

extent this cause of action can be construed as distinct from Larson's core tax refund claim, it

also should be dismissed because Larson fails to point to any specific statutory or regulatory

language requiring that the IRS provide him "with information about its collection of the penalty

from co-promoters."  Compl. ¶ 51.

Under the APA, 5 U.S.C. § 706(1), a challenge to an agency's supposed failure to act is

reviewable "only where a plaintiff asserts that an agency failed to take a *discrete* agency action

that it is *required to take*."  *Norton*, 542 U.S. at 64; *Benzman v. Whitman*, 523 F.3d 119, 130-31

(2d Cir. 2008).  In support of this cause of action, Larson cites generally (and exclusively) to

---

[6] Even if 5 U.S.C. § 704 did not bar Larson's APA claims, the complaint does not articulate any viable basis for relief under the APA.  Larson's claims for monetary relief are not cognizable under the APA, because the APA applies only to suits "seeking relief other than money damages."  5 U.S.C. § 702.  And to the extent the equitable relief Larson seeks can be characterized as either declaratory or injunctive relief, both types of relief are unavailable to address a matter pertaining to tax collection.  *See SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127, 137 (2d Cir. 2002) (Declaratory Judgment Act "allows a federal court to declare the rights and obligations of the parties properly before it in any 'case of actual controversy within its jurisdiction, *except with respect to federal taxes*'") (emphasis added by court) (quoting 28 U.S.C. § 2201(a)); 26 U.S.C. § 7421(a) (Anti-Injunction Act provides, in pertinent part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."); *Ross v. United States*, 460 F. Supp. 2d 139, 149 (D.D.C. 2006) ("To the extent plaintiffs seek injunctive relief under the APA, the claim fails based on the Anti-Injunction Act because an action brought under the APA is barred if it concerns the assessment or collection of federal taxes.") (internal quotation marks omitted).

Treasury Regulation § 301.6707-1T[7] for the proposition that "[t]he IRS has unlawfully withheld information about amounts collected from co-promoters for the [Section] 6707 penalty."  Compl. ¶ 49; *see id.*¶¶ 50-51.  Among other things, the regulation explains that "the penalty for failure to register a tax shelter timely . . . may be imposed on each person who fails to register a tax shelter timely . . . ."  Treas. Reg. § 301.6707-1T (1984-2014) at A-9.  To illustrate this point, the regulation provides an example wherein eight individuals would be liable for a penalty, and notes that "the 8 participants [in the organization of the tax shelter] are jointly and severally liable" for the penalty.  *Id.*  Apart from this reference, however, there is no language whatsoever in the regulation regarding the computation of penalties as between multiple responsible parties.  There certainly is no language to support Larson's allegation that the regulation "provides that the IRS is required to abate [his] liability to the extent that the total penalty collected from all of the co-promoters exceeds the amount of the penalty," Compl. ¶ 50, let alone the allegation that "[t]he IRS *is required to provide* . . . information about its collection of the penalty from co-promoters so that there can be a determination as to whether the IRS properly applied" the regulation, *id.* ¶ 51 (emphasis added).[8]

       In short, Larson does not—and cannot—point to specific statutory or regulatory language requiring IRS to provide the information he seeks, and this critical shortcoming is fatal to his purported "failure to act" claim under 5 U.S.C. § 706(1).  The complaint plainly fails to adequately allege that by not providing Larson with information about its collection efforts as to

---

[7] This Treasury Regulation was in effect from 1984 up to and including July 30, 2014; as of July 31, 2014, the "temporary" regulation was removed and replaced by Treasury Regulation § 301.6707-1.  *See* 79 Fed. Reg. 44,282, 44,283 (2014).

[8] Indeed, separate statutes prohibit the disclosure of the very information that Larson appears to be asking for here.  Section 6103 of the Internal Revenue Code only authorizes the disclosure of third-party tax information under certain circumstances, and there are both civil and criminal consequences for improper disclosures.  *See* 26 U.S.C. §§ 6103(h)(4), 7213, 7431.

potentially jointly and severally liable co-promoters, the IRS failed to take a *discrete* action that it was *required to take*, *see Norton*, 542 U.S. at 64. Consequently, this alleged failure to act is not subject to APA review.

This claim is equally deficient if analyzed under the federal mandamus statute, which only confers jurisdiction over actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owned to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" *Escaler v. U.S. Citizenship & Immigration Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). The one cited Treasury Regulation does not identify a non-discretionary duty owed to Larson by the IRS; while Larson plainly is dissatisfied with the IRS's refusal to provide him with information about other taxpayers, there is no basis to compel the IRS to provide this information here. "A party who seeks a writ of mandamus must show a clear and indisputable right to its issuance," *Escaler*, 582 F.3d at 292 (internal quotation marks omitted), and Larson has not come close to meeting this burden here.

## III.   LARSON'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED

Larson's putative claim that the Section 6707 penalty assessed against him violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution is yet another attempt to circumvent his failure to satisfy the jurisdictional prerequisites for a tax refund suit, and the Court should not permit him to proceed under this novel theory. The Eighth Amendment does not create a free-standing private right of action against the United States, as Congress has not waived the Government's sovereign immunity from lawsuits based on constitutional claims. *See, e.g.*, *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999); *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). And the fact that a litigant may raise arguments

20

grounded in the Excessive Fines Clause as a defense against, for example, civil forfeiture proceedings, "does not . . . provide a basis for either subject matter jurisdiction or waiver of sovereign immunity."  *Lopes v. United States*, 862 F. Supp. 1178, 1185 (S.D.N.Y. 1994); *see also Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002) (dismissing plaintiff's claim for violation of the Excessive Fines Clause because "[t]he United States as a sovereign is immune from suit for money damages unless it unequivocally has waived such immunity").  In short, the doctrine of sovereign immunity prohibits Larson from using the constitutional argument as a standalone basis for proceeding with the case.

## CONCLUSION

For the foregoing reasons, Larson's complaint should be dismissed in its entirety.

Dated:   New York, New York
         April 29, 2016

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for Defendant United States of America*

By:      /s/ Andrew E. Krause
         ANDREW E. KRAUSE
         Assistant United States Attorney
         86 Chambers Street, Third Floor
         New York, New York  10007
         Telephone:  (212) 637-2769
         Facsimile:  (212) 637-2786