UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

JOHN M. LARSON,                      :     Case No. 1:16-cv-00245 (VEC)
                                     :
            Plaintiff,               :
                                     :
      vs.                            :
                                     :
UNITED STATES OF AMERICA,            :
                                     :
            Defendant.               :
_____x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE COMPLAINT**

**(Oral Argument Requested)**


MEGAN L. BRACKNEY
Kostelanetz & Fink, LLP
7 World Trade Center, 34th Floor
New York, New York 10007
Telephone: (212) 808-8100

C. WELLS HALL, III
REED J. HOLLANDER
Nelson Mullins Riley & Scarborough LLP
100 N. Tryon Street, Suite 4300
Charlotte, NC 28202
Telephone: (704) 417-3206

*Attorneys for Plaintiff John M. Larson*

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ................................................................................ 1

I.    THE FULL-PAYMENT RULE SHOULD NOT APPLY TO § 6707 PENALTIES ...... 3

II.   THE FULL-PAYMENT RULE CANNOT APPLY TO § 6707 PENALTIES
WITHOUT VIOLATING MR. LARSON'S FIFTH AMENDMENT RIGHT
TO DUE PROCESS ..................................................................................... 6

III.  SECTION 6707 PENALTIES ARE DIVISIBLE AND THUS EXCEPTED FROM
THE FULL-PAYMENT RULE ...................................................................... 9

IV.  THE COURT HAS JURISDICTION OVER MR. LARSON'S CLAIMS UNDER
THE ADMINISTRATIVE PROCEDURE ACT .......................................... 13

      A.    Mr. Larson's Claims Can Be Reviewed Under the APA ...................................... 14

             1.    The IRS's Actions Are Final Agency Actions Not Committed
to IRS Discretion ..................................................................... 15

             2.    The Legislative History Shows that Congress Did Not Intend for
§ 6700 Penalties to Be Assessed at Such High Levels that Judicial
Review Would be Foreclosed ................................................. 16

      B.    The Court Should Review the IRS's Actions Under the APA Because a Refund
Suit Does Not Provide an Adequate Remedy to Mr. Larson ............................... 19

V.    THE COURT HAS JURISDICTION OVER MR. LARSON'S ACTION TO
COMPEL THE IRS TO PROVIDE INFORMATION ABOUT ITS COLLECTION
EFFORTS AGAINST CO-PROMOTERS ............................................... 21

VI.  THE COURT HAS JURISDICTION OVER MR. LARSON'S CLAIM THAT
THE § 6707 PENALTY VIOLATES THE EXCESSIVE FINES CLAUSE OF THE
EIGHTH AMENDMENT ............................................................................ 22

CONCLUSION ....................................................................................................... 23

CERTIFICATE OF SERVICE .............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner,* 387 U.S. 136 (1967) ............................................................. 14

*Ardalan v. United States,* 748 F.2d 1411 (10th Cir. 1984) ......................................... 8-9

*Armstrong v. Manzo,* 380 U.S. 545 (1965) ..................................................................... 7

*Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635 (2d Cir. 2005) ............... 13

*Austin v. United States,* 509 U.S. 602 (1993) .............................................................. 22

*Beverly Health & Rehab. Servs., Inc. v. Thompson,* 223 F. Supp. 2d 73 (D.D.C. 2002) ............. 15

*Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667 (1986) ........................................ 14, 16

*Brown v. United States*, Civ. No. 91-A-1383, 1992 WL 87920 (D. Colo. Apr. 24, 1992) .......... 11

*Bushmaier v. United States,* 230 F.2d 146 (8th Cir. 1960) ............................................. 4

*Callister Nebeker & McCullough v. United States*, 2015 WL 5918494
  (W.D. Wash. Oct. 9, 2015) ........................................................................................... 23

*Chatman v. United States*, No. CV 14-1244 PA (MANx), 2014 WL 6367110
  (C.D. Cal. Oct. 22, 2014) ........................................................................................ 19-20

*Cheatham v. United States,* 92 U.S. 85 (1875) ............................................................. 4

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ....................................... 15

*Cohen v. United States,* 23 Cl. Ct. 717 (1991) ............................................................... 6

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) ........................................... 14, 21

*Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009) ........................................... 15, 16, 23

*Darby v. Cisneros,* 509 U.S. 137 (1993) ..................................................................... 13

*DiNatale v. United States,* 12 Cl. Ct. 72 (1987) ............................................................ 6

*Diversified Group, Inc. v. United States*, 123 Fed. Cl. 442 (2015) ........................................ 10-11

*Estate of Michael ex. Rel. Michael v. Lullo*, 173 F.3d 502 (4th Cir. 1999) ................................. 20

*Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960) ............... passim

*Frise v. United States,* 5 Cl. Ct. 488 (1984)............................................................... 6

*Horkey v. United States,* 715 F. Supp. 259 (D. Minn. 1989)........................................ 6

*In re Mitchell*, 109 B.R. 434 (Bankr. W.D. Wash. 1989) ........................................... 17

*INS v. St. Cyr*, 533 U.S. 289 (2001) ...................................................................... 16

*Katz v. United States,* 22 Cl. Ct. 714 (1991).......................................................... 6

*Kell-Strom Tool Co. v. United States,* 205 F. Supp. 190 (D. Conn. 1962) .................................. 6

*King v. Simpson*, 189 F.3d 284 (2d Cir. 1999) ....................................................... 23

*Laing v. United States*, 423 U.S. 161 (1976) ......................................................... 8

*Lambropoulos v. United States,* 18 Cl. Ct. 235 (1989)............................................. 6

*Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003)............................................. 16

*Magee v. United States,* 24 Cl. Ct. 511 (1991) ....................................................... 6

*Moore v. United States*, No. C13-2063 RAJ, 2015 WL 1510007 (D. Utah April 1, 2015).......... 23

*Nat. Rest. Ass'n v. Simon*, 411 F. Supp. 993 (D. D.C. 1976) ....................................... 20

*Pfaff v. United States*, No. 14-CV-03349-PAB-NYW, 2016 WL 915738
    (D. Colo. March 10, 2016) ................................................................... 10-11

*Phillips v. Comm'r,* 283 U.S. 589 (1931)........................................................... 7, 9

*Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502 (2d Cir. 1994)........................... 23

*Rocovich v. United States,* 933 F.2d 991 (Fed. Cir. 1991) ........................................ 10

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008)........................................ 13-16, 19

*Sherwood v. Scanlon*, 207 F. Supp. 686 (E.D.N.Y. 1962)...................................... 11, 12

*Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993) .............................................. 6

*South Carolina v. Regan*, 465 U.S. 367 (1984) ................................................... 20

*Starr Int'l Co. v. United States*, No. 14-cv-01593 (CRC), 2016 WL 410989

(D.D.C. Feb. 2, 2016) ......................................................................................... 15

*Steele v. United States*, 280 F.2d 89 (8th Cir. 1960)......................................... 12

*Trudeau v. FTC,* 456 F.3d 178 (D.C. Cir. 2006) .......................................... 14

*United States v. Bajakajian*, 524 U.S. 321 (1988) ......................................... 22

*United States v. Engels*, No. C98-2096-MJM, 2001 WL 1078380 (N.D. Iowa May 24, 2001)..... 6

*United States v. Jones*, 160 F.3d 641 (10th Cir. 1998) .............................. 7, 9

*Vir v. United States*, 125 Fed. Cl. 293 (2016)............................................ 12

*We the People Foundation, Inc. v. United States*, 485 F.3d 140 (2d Cir. 2007) .................. 21, 23

*Whitcombe v. U.S. Dep't of Treasury*, 922 F.2d 846 (9th Cir. 1991)............................ 9

**Constitution**

U.S. Const. Amend. V  ......................................................................... 6-7, 9

U.S. Const. Amend. VIII  ........................................................................22-23

**Statutes**

5 U.S.C. § 702............................................................................................ 13, 14

5 U.S.C. § 704............................................................................................ 14, 19

26 U.S.C. § 6011 ........................................................................................ 18

26 U.S.C. § 6103 ........................................................................................ 22

26 U.S.C. § 6111 .................................................................................. 1, 15, 17, 18

26 U.S.C. § 6203 ........................................................................................ 15

26 U.S.C. § 6303 ........................................................................................ 15

26 U.S.C. § 6671 ................................................................................... 2, 15

26 U.S.C. § 6672..................................................................................... 11, 12, 22

26 U.S.C. § 6700..................................................................................... 11, 12

26 U.S.C. § 6701..................................................................................... 11, 12

26 U.S.C. § 6707 .................................................................................................. passim

26 U.S.C. § 7421 ........................................................................................................ 20

26 U.S.C. § 7422 ............................................................................................ 1, 10, 13

28 U.S.C. § 1331 ........................................................................................................ 13

28 U.S.C. § 1346 ................................................................................... 1, 3, 4, 9, 13

28 U.S.C. § 1361 ............................................................................................ 13, 20, 21

28 U.S.C. § 1653 ........................................................................................................ 13

**Regulations**

26 C.F.R. § 301.6707-1T ..................................................................................... 2, 22

26 C.F.R. § 301.6111-1T ..................................................................................... 2, 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 3

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 3, 13

**Legislative History**

67 Cong. Rec. 3530 (1926) ........................................................................................ 5

67 Cong. Rec. 3755 (1926) ........................................................................................ 5

American Jobs Creation Act of 2004, § 816, Pub. L. 108-357, 118 Stat. 1418 (Oct. 22, 2004) .. 18

Deficit Reduction Act of 1984, § 141, Pub. L. 98-369, 98 Stat. 494 (July 18, 1994) ................. 17

P.L. 108-57, H.R. Rep. 108-548(I), 269 (June 16, 2004) ........................................... 18

Revenue Act of 1924, Pub. L. No. 68-176, § 900, 43 Stat. 253, 336 (1924)................................. 5

S. Rep. No. 68-398, 68th Cong., 1st Sess. (1924) ...................................................... 5

Tax Reform Act of 1986, § 1532, Pub. L. 99-514, 100 Stat. 2085 (Oct. 22, 1986) ................... 17

Taxpayer Relief Act of 1997, § 2028, Pub. L. 105-34, 111 Stat. 788 (Aug. 5, 1997)................. 17

**Other Authorities**

IRS Litigation Guideline Memorandum, 1998 LGM TL-27, 1988 WL 89812
 (Jan. 22, 1988) ..................................................................................................................... 11

IRS Nondocketed Service Advisory Review, NSAR 20032901F, 2003 WL 22205991
 (July 18, 2003)...................................................................................................................... 22

## PRELIMINARY STATEMENT

John Larson brought this action to challenge the approximately $160 million penalty assessed against him, of which the Government is still seeking to collect over $60 million. This penalty was assessed under 26 U.S.C. § 6707 for failure to file two tax shelter registration forms. Because the amount of the penalty, as incorrectly computed by the IRS, is astronomically high and is unrelated to funds received by Mr. Larson, he could not pay in full before filing this suit. The Court has jurisdiction over Mr. Larson's claims under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 as a refund claim either because the full-payment rule should not apply or because the penalty is divisible, meaning that Mr. Larson only needs to pay a portion of it to establish jurisdiction. Alternatively, the Court has jurisdiction to review Mr. Larson's claims under the standards of the Administrative Procedure Act (the "APA") and the Fifth Amendment Due Process and the Eighth Amendment Excessive Fines clauses of the U.S Constitution.

The questions of whether the penalty was properly computed and whether the Court has jurisdiction are intertwined in this case. Mr. Larson contests any penalty being assessed against him at all, but also has specifically alleged that the IRS used an improper method to compute the penalty in the amount of approximately $160 million, when it should be no more than $7 million under any circumstances. If the penalty could be no more than $7 million, then Mr. Larson has made full payment because his $1,432,735 payment, plus the $96,820,667 collected from the other co-promoters, would more than cover the assessment. The IRS's misapplication of the language of § 6707[1] has led to a penalty far greater than authorized by Congress, placing Mr. Larson in the impossible position of being required to pay in full an enormous penalty before he can contest the IRS's erroneous application of the law.

---

[1] Unless otherwise noted, all references to 26 U.S.C. §§ 6707 and 6111 are to the versions of the statute in effect for the 1997-2000 tax years.

Section 6707, as in effect at the time of these transactions, states that a person who fails to timely register a tax shelter is subject to a penalty equal to the greater of "(A) 1 percent of the aggregate amount invested in such tax shelter, or (B) $500." Section 6707 penalties are payable upon notice and demand and not subject to the deficiency procedures that allow pre-payment review in Tax Court, *see* § 6671(a), leaving a refund suit as the only method of judicial review.

The legislative history is silent as to the meaning of the phrase, "aggregate amount invested." In temporary regulations, not subject to notice and comment and issued in a "Questions and Answers" format, the IRS defined "aggregate amount invested" as "the aggregate amount to be received from the sale of interests in the investment and includes all cash, the fair market value of all property contributed, and the principal amount of all indebtedness received in exchange for interests in the investment . . . ." 26 C.F.R. §§ 301.6707-1T, A-1; 301.6111-1T, A-21.

In computing the "aggregate amount invested" in the transactions here, the IRS included the value of loans and loan premiums, which inflated the 1% penalty from approximately $7 million to approximately $160 million. The loan and loan premiums, however, should not be included because they are not part of the "aggregate amount invested." As stated in the explanation provided with the February 15, 2011 penalty computation, the IRS disallowed the transactions here, in part, because it found that the loans were not bona fide. Indeed, the very declaration submitted by the IRS states that the transaction involved clients "*purportedly* borrowing money from one of four banks" in the BLIPS transaction. *See* Declaration of Michael A. Halpert, at ¶ 6 (emphasis added). Either the loans were bona fide or they were not. The IRS cannot treat the exact same loan transactions as bona fide for purposes of vastly inflating the § 6707 penalty, but not bona fide for purposes of disallowing the tax benefits.

2

In order to determine whether this Court has jurisdiction, *i.e.* whether Mr. Larson has made a full payment, the Court must first decide whether the IRS properly computed the penalty. This is a mixed question of law and fact. The legal question is whether IRS properly interpreted the term "aggregate amount invested" in § 6707 to include loans and loan premiums in addition to the actual cash invested in the transaction. The factual question involves the specifics of the transactions, including the proper amount of the penalty if the loans and loan premiums are not included. These issues must be decided before the Court can determine whether it has subject matter jurisdiction in this case. As the jurisdictional and merits questions are intertwined, the case should not be dismissed under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), but discovery should go forward to develop the factual record.

The IRS is using its incorrectly computed and impossibly high penalty both as a sword to bleed Mr. Larson and a shield to defend itself against any judicial scrutiny. The proper approach here is for the Court to determine whether the penalty properly includes the loan and loan premiums and if Mr. Larson has satisfied (or indeed, is even required to satisfy) the full-payment rule. Otherwise, Mr. Larson will be deprived of judicial review of the IRS's actions against him.

## I.    THE FULL-PAYMENT RULE SHOULD NOT APPLY TO § 6707 PENALTIES

Mr. Larson's refund claim arises under 28 U.S.C. § 1346(a)(1), which provides that this court shall have original jurisdiction over any civil action against the United States "for the recovery of any … penalty claimed to have been collected without authority." The Government's contention that *Flora v. United States*, 357 U.S. 63 (1958), *aff'd on reh'g*, 362 U.S. 145 (1960), requires Mr. Larson to pay in full a penalty in excess of $67 million in order for this court to have jurisdiction is not well founded. *See* Memorandum of Law of Defendant United States of America in Support of Its Motion to Dismiss The Complaint ("Gov. Mem.") at 8-9. *Flora*'s logic

3

is expressly grounded on the assumption that a taxpayer can pursue a pre-payment remedy by filing a petition in the Tax Court, an avenue that is unavailable for § 6707 penalties.

*Flora* comprised two cases—the initial hearing by the Supreme Court in *Flora I,* 357 U.S. 63 (1958), and rehearing in *Flora II*, 362 U.S. 145 (1960). The IRS had assessed an income tax deficiency after disallowing certain losses on the taxpayer's return. *Flora I,* 357 U.S. at 63. The taxpayer paid a portion of the assessment before filing a refund suit, and the district court held that it lacked subject matter jurisdiction because the taxpayer failed to pay the full amount of the assessment. *Id.* at 64. After the Tenth Circuit vacated the judgment and remanded with instructions to dismiss, the Supreme Court granted *certiorari* to resolve the conflict between the Tenth Circuit's decision and *Bushmaier v. United States,* 230 F.2d 146 (8th Cir. 1960), which held that partial payment of income taxes was sufficient to confer subject matter jurisdiction over a tax refund suit.

### *Flora I*

Before the Supreme Court, the government argued that the language in 28 U.S.C. § 1346(a) that the district court had jurisdiction over "[a]ny civil action … for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected…" required full payment of the tax assessment as a prerequisite to suit. The Court agreed, relying on *Cheatham v. United States,* 92 U.S. 85 (1875). Citing to dictum in *Cheatham*, the *Flora I* Court said that it "understood the statutes of that time to require full payment of an assessed tax as a condition precedent to the right to sue the collector for a refund." *Id.* at 68. The *Flora I* Court then looked at § 1346(a), which "employ[ed] language identical to that in the statute under which the full-payment understanding developed [in *Cheatham*]." *Id.* at 69.

The Court explained away concerns about the hardship imposed by pre-litigation payment, saying that "part-payment remedy [was not] necessary for the benefit of a taxpayer too poor to pay the full amount of the tax" because "[s]uch an individual is free to litigate in Tax Court without any advance payment." *Id.* at 75. Ultimately, the Court remanded the case to the district court, but later agreed to rehear the case in *Flora II,* 362 U.S. 145 (1960).

*Flora II*

On rehearing, the decision was closely divided, but the Court held that a taxpayer must make full payment of an income tax assessment before suing for a refund. In reaching this conclusion, the majority relied heavily on Congressional history of the 1924 establishment of the Board of Tax Appeals [later the U.S. Tax Court]. 362 U.S. at 163. Establishment of the Board of Tax Appeals allowed taxpayers to challenge tax deficiency determinations before paying their contested liabilities. Revenue Act of 1924, Pub. L. No. 68-176, § 900, 43 Stat. 253, 336-338 (1924). The Court recounted that this avenue of appeal alleviated the hardship of being required to pay "a tax that is ruinous, [and] that the taxpayer can not pay," 67 Cong. Rec. 3755 (1926) (statement of Sen. Reed), in order to have "his day in court by direct action." 67 Cong. Rec. 3530 (1926). Congress recognized that "[t]he right of appeal after payment of [a] tax is an incomplete remedy, and does little to remove the hardship occasioned by an incorrect assessment." S. Rep. No. 68-398, at 8 (1924). Because Flora had the option to seek review of the income tax assessment in the Tax Court, the Supreme Court explained, "[t]he result is a system in which there is one tribunal for prepayment litigation and another for post-payment litigation with no room contemplated for a hybrid of the type proposed by petitioner." *Flora II*, 362 U.S. at 163

*Flora II* did not consider, however, whether a different rule should apply if there was no prepayment forum. The four dissenting Justices described as "grossly unfair" and "shockingly

inequitable" a hypothetical engendered by the majority's ruling: "where a taxpayer has paid … a part only of an illegal assessment and is unable to pay the balance within the two-year period of limitations, he would be deprived of any means of establishing the invalidity of the assessment and of recovering the amount illegally collected from him . . . ." *Flora II*, 362 U.S. at 195, n. 22 (J. Whittaker dissenting). *Flora II* does not address the situation here, where: (a) there is no Tax Court jurisdiction; (b) the IRS has taken the position that the penalty is not divisible; (c) and the taxpayer cannot pay the full penalty. The Court did not hold, as the government contends, that the full-payment rule applies to challenges to penalties that are independent of any underlying tax deficiency, such as a penalty imposed under § 6707, nor did it directly confront how to treat a penalty unreviewable in the Tax Court. Lower courts' attempts to apply *Flora* to cases involving penalties and interest have been all over the board, illustrating the difficulty of extending *Flora* beyond its original scope.[2]

## II.   THE FULL-PAYMENT RULE CANNOT APPLY TO § 6707 PENALTIES WITHOUT VIOLATING MR. LARSON'S FIFTH AMENDMENT RIGHT TO DUE PROCESS

If the Court concludes that the full-payment rule requires Mr. Larson to pay a $67,661,349 penalty before he can show this court that he actually owes $0, the Court should consider whether such a ruling would violate Mr. Larson's due process rights under the Fifth

---

[2] *See, e.g., Shore v. United States*, 9 F.3d 1524, 1527 (Fed. Cir. 1993) (allowing payment of only tax principal prior to refund action); *United States v. Engels*, No. C98-2096-MJM, 2001 WL 1078380 (N.D. Iowa May 24, 2001) (same); *Kell-Strom Tool Co. v. United States,* 205 F. Supp. 190, 194 (D. Conn. 1962) (holding that taxpayer is not required to pay interest to maintain refund suit); *Magee v. United States,* 24 Cl. Ct. 511, 512 (1991) (excluding interest and penalties from full-payment requirement); *Katz v. United States,* 22 Cl. Ct. 714, 715 (1991) (holding that deficiency assessment subject to full-payment rule included only tax and interest, not penalties); *Cohen v. United States,* 23 Cl. Ct. 717, 719 n.3 (1991) (holding payment of only principal and penalty required if taxpayer raises no independent issues regarding interest). *But see Horkey v. United States,* 715 F. Supp. 259, 260 (D. Minn. 1989) (requiring payment of penalties and tax deficiency to maintain refund suit); *Frise v. United States,* 5 Cl. Ct. 488, 489-90 (1984) (requiring taxpayer to pay all tax, interest, and penalties assessed to maintain refund suit); *DiNatale v. United States,* 12 Cl. Ct. 72, 74 (1987); *Lambropoulos v. United States,* 18 Cl. Ct. 235, 237 (1989).

Amendment. The Fifth Amendment prohibits the government from depriving persons of "life, liberty or property without due process of law."  U.S. Const. Amend. V.  The full-payment rule cannot apply to § 6707 penalties without violating the Fifth Amendment where there is no alternative forum having jurisdiction over pre-payment challenges to such penalties and where an individual does not have the financial means to pay the penalties in full. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).

Where tax deficiencies are challenged, the Supreme Court has explained that "[t]he procedure provided in [the Internal Revenue Code] *satisfies the requirements of due process* because two alternative methods of eventual judicial review are available to the [taxpayer]." *Phillips v. Comm'r,* 283 U.S. 589, 612 (1931) (emphasis added). He can either "voluntarily pay[] the tax" and "contest his liability by bringing an action . . . against the United States . . . to recover the amount paid"; or (2) "avail himself of the provisions for immediate redetermination of the liability by the [Tax Court] . . . ." *Id.* at 597-98. The establishment of the Tax Court was a key driver of the *Flora* Court's decision that requiring a taxpayer to pay income tax in full prior to a refund suit did not contravene the "requirements of due process," since the taxpayer always had the alternative Tax Court option which did not require payment in full.

While not expressly referencing due process, the majority in *Flora II* cited to a House Committee Report on the legislation creating the Board of Tax Appeals, explaining Congress's creation of that Board [later, the Tax Court] as a means to prevent "great financial hardship" caused by the full-payment requirement: "The right to appeal after the payment of the tax is an incomplete remedy, and does little to remove the hardship caused by an incorrect assessment.

The payment of a large additional tax on income received several years previous and which may have, since its receipt, been either wiped out by subsequent losses, invested in nonliquid assets, or spent, sometimes forces taxpayers into bankruptcy, and often causes great financial hardship and sacrifice." 362 U.S. at 159. Further in the majority opinion, the Court dispensed with the taxpayer's arguments about the unfairness of the full-payment rule, explaining that "[a] word should also be said about the argument that requiring the taxpayers to pay the full assessment before bringing suits will subject some of them to great hardship. This contention seems to ignore entirely the right of the taxpayer to appeal the deficiency to the Tax Court without paying a cent." *Id.* at 178. Contemplating a scenario in which no avenue of appeal was open to a taxpayer, the dissenting Justices expressed their strong concern about the unfairness and inequity of depriving a taxpayer of any means to establish the invalidity of an assessment. *Flora II*, 362 U.S. at 195, n. 22 (J. Whittaker dissenting).

In *Laing v. United States*, 423 U.S. 161 (1976), the Supreme Court again suggested that the full-payment rule could not be used against a taxpayer who is deprived of the opportunity to litigate in Tax Court. *Id.* at 184 (holding that IRS may not offer for sale property seized until the taxpayer has had an opportunity to litigate in Tax Court, so long as that right is not voluntarily waived by the taxpayer); *see also id.* at 208-09 (Blackmun, J. dissenting) ("[*Flora*] demonstrates that the full-payment rule applies only where a deficiency has been noticed, that is, only where the taxpayer has access to the Tax Court for redetermination prior to payment. This is the thrust of the ruling in *Flora*, which was concerned with the possibility, otherwise, of splitting actions between, and overlapping jurisdiction of, the Tax Court and the district court.") (citing *Flora II,* 362 U.S. at 175). Likewise, in *Ardalan v. United States,* 748 F.2d 1411, 1414 (10th Cir. 1984), the taxpayers brought suit for refund of income taxes after waiving their right to appeal in Tax

Court. The Court explained that *voluntary* "waiver of that right to appeal in the Tax Court and preclusion from bringing suit in the district court under § 1346(a)(1) without payment does not deprive [a] taxpayer of any constitutional right," thereby implying that a non-voluntary barrier to Tax Court review would violate the Due Process Clause.

The *Flora*, *Phillips,* and *Ardalan* decisions all presume that the taxpayer has the opportunity to litigate in Tax Court, which is not true in the present case, and *Liang* expressly recognizes the inequity of applying the full-payment rule where the Tax Court lacks jurisdiction. Applying the full-payment rule would bar all judicial review here because Mr. Larson cannot pay the § 6707 penalties. The IRS's improper assessment of impossibly high penalties forecloses him from any forum to challenge those penalties, thus depriving him of "property, without due process of law," U.S. Const. amend. V. Although the "[f]undamental requirement of due process is the opportunity to be heard *at a meaningful time and in a meaningful manner*[,]" Mr. Larson asks, at minimum, for the opportunity to *be heard. Jones,* 160 F.3d at 645 (emphasis added) (citation omitted).[3]

### III.    SECTION 6707 PENALTIES ARE DIVISIBLE AND THUS EXCEPTED FROM THE FULL-PAYMENT RULE

When taxes or penalties are "divisible," as they are here, the full-payment rule is satisfied if the taxpayer pays what is owed for one taxable event. *Flora II,* 362 U.S at 171 n. 37; *Whitcombe v. U.S. Dep't of Treasury*, 922 F.2d 846 (9th Cir. 1991). Mr. Larson paid $1,432,500, which the IRS applied to the 1999 BLIPS transaction penalties. *See* Declaration of Michael A.

---

[3] The Government's argument that the Due Process Clause does not bar application of the full-payment rule, Gov. Mem. at 12-14, should be rejected because it relies entirely on cases that (i) involve tax assessments that are otherwise reviewable in Tax Court; or (ii) do not address due process at all.

Halpert, at ¶ 9. This amount represented payment of the penalties that related to five separate BLIPS transactions.

Section 6707 penalties should be considered divisible so that the Court can exercise refund jurisdiction under § 7422. In *Flora II,* the Supreme Court set forth an exception to the full-payment rule for "divisible taxes." 362 U.S. at 174-75 nn.37-38. In discussing excise tax, the Supreme Court explained that those assessments "may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount." *Id*. at n. 38. After *Flora II,* courts have described a divisible tax as "one that represents the aggregate of taxes due on multiple transactions." *Rocovich v. United States,* 933 F.2d 991, 995 (Fed. Cir. 1991). Section 6707 penalties are divisible as they represent "the aggregate of taxes due on multiple transactions."

The Government cites to *Diversified Group, Inc. v. United States*, 123 Fed. Cl. 442 (2015), and *Pfaff v. United States,* No. 14-CV-03349-PAB-NYW, 2016 WL 915738 (D. Colo. March 10, 2016) to support its argument that § 6707 penalties are not divisible by the underlying tax shelter transactions because the penalty is assessed for each failure to file a form reporting the tax shelter, and not separately for each individual transaction that would have been covered by that form. Gov. Mem. at 9-12. *Diversified* and *Pfaff* are the only two cases that consider the issue presented in this case, *i.e.,* whether § 6707 penalties are divisible, and *Pfaff* essentially adopts the reasoning of *Diversified*. The issue of whether § 6707 penalties are divisible is still one of first impression in the Second Circuit, and *Diversified* is currently on appeal with the Federal Circuit. *Diversified* and *Pfaff* did not consider divisibility in the context presented here, i.e., where if the Court does not find that the penalty is divisible (or the full-payment rule does not otherwise apply), the penalty assessment is not subject to judicial review. As explained in the

previous section, such a ruling would violate due process. Indeed, in *Diversified* and *Pfaff*, the courts did not address the interrelationship between due process and divisibility. Rather, the court in *Diversified* describes refund suits and the Tax Court, as a "system" of two tribunals, 123 Fed. Cl. at 448, but then does not explain what happens to the person assessed penalties who is shut out of the system altogether because there is no jurisdiction in either tribunal, seeming almost unaware that the plaintiff in that case could not seek Tax Court review.

This is a crucial point that the *Diversified* and *Pfaff* decisions missed. Courts, including *Flora II*, as well as the IRS, have found that certain penalties are divisible because, if they were not, the person assessed would effectively be foreclosed from judicial review. *See* IRS Litigation Guideline Memorandum, 1998 LGM TL-27, 1988 WL 89812 (Jan. 22, 1988) (noting that *Flora* full-payment rule based on the availability of the Tax Court as an alternative, pre-payment forum for review). And, indeed, courts have found that the fact that a penalty or tax is divisible has avoided a due process issue. *See Brown v. United States*, Civ. No. 91-A-1383, 1992 WL 87920 (D. Colo. Apr. 24, 1992) ("The unavailability of a tax court challenge for the section 6672 taxes does not deprive taxpayers of due process when they can pay the assessment and sue for a refund in district court"); *Sherwood v. Scanlon*, 207 F. Supp. 686, 687 (E.D.N.Y. 1962) (noting divisibility of § 6672 penalties make refund jurisdiction an adequate remedy at law). Due process concerns warrant an expansive view of divisibility.

Further, the *Diversified* and *Pfaff* decisions, as well as the Government here, focuses on the wrong aspects of § 6707 and the penalties and taxes which courts and the IRS have found to be divisible. As already discussed, excise tax is assessed based on separate activities. Likewise, penalties under § 6700 are assessable "with respect each activity" § 6700(a)(2), and penalties under § 6701 are assessable "with respect to each such document," § 6701(a). These are easy

cases for divisibility. However, this does not mean that *only* penalties that are broken down in the statute itself by reference to separate transactions or events are divisible. Rather, the concept of divisibility also should apply to a penalty that is based on an aggregation of transactions.

In this respect, § 6707 penalties are more like § 6672 penalties than excise taxes or penalties under §§ 6700 or 6701. Section 6672(a) provides that a responsible person who failed to collect, account for, or pay over certain employment taxes, is liable for penalty of 100% of the "*total amount* of the tax evaded or not collected, or not account for, or not paid over." (emphasis added). Nowhere in § 6672 is there a reference to penalties relating to specific activities or events. Nonetheless, beginning with *Steele v. United States*, 280 F.2d 89, 91 (8th Cir. 1960), courts have held that § 6672 penalties are divisible such that that only the tax related to one employee for one quarter must be paid in order for there to be judicial review through a refund action for the entire amount of the assessment because the penalties relate to separate taxes of individual employees. *See, e.g. Vir v. United States*, 125 Fed. Cl. 293, 300 (2016) (collecting cases); *Sherwood*, 207 F. Supp. at 687.

Similarly, with § 6707 penalties, the statute states that the penalty is based upon the "aggregate amount invested" in the tax shelter that was not registered. By stating that the penalty is computed by looking to a percentage of the "aggregate amount invested," the IRS must look at the specifics of each transaction. *See* 26 C.F.R. § 301.6111-1T at A-21, A-22. In this way, the penalty is divisible because it relates to individual and readily identifiable separate transactions, and thus "may be divisible into a tax on each transaction or event." *Flora II*, 362 U.S. at 171, 175, n. 37, 38. Because divisibility is an exception to the full-payment rule that preserves due process, and the § 6707 penalties are based on an aggregation of amounts invested in separate transactions, the Court should find that § 6707 is divisible.

12

## IV. THE COURT HAS JURISDICTION OVER MR. LARSON'S CLAIMS UNDER THE ADMINISTRATIVE PROCEDURE ACT

In the alternative, if the Court finds that it does not have jurisdiction over Mr. Larson's claims under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422, the Court should review the IRS's actions under the standards of the APA.[4] Even if the penalties were correctly computed, due process and the APA both allow Mr. Larson to have his day in court to challenge it. The fact that there is strong reason to believe that the penalty has been grossly miscalculated, and that miscalculation is being used both as a sword to bleed him dry and a shield to prevent the Government from facing scrutiny, makes the due process and APA concerns that much greater.

The APA provides, in relevant part, that:

> [A] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial review thereof*. . . . The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

5 U.S.C. § 702 (emphasis added). *See also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)).

The Government argues that Mr. Larson's suit is barred by sovereign immunity. The Administrative Procedure Act ("APA"), however, is an express waiver of sovereign immunity.

---

[4] The APA itself does not confer subject matter jurisdiction. *Sharkey*, 541 F.3d at 84. Larson's Second Cause of Action was brought under the APA, and his Fourth Cause of Action was brought under the APA and 28 U.S.C. § 1361 (mandamus). To the extent that the Court deems it necessary, we ask for leave of the Court to amend the Complaint to add a reference to 28 U.S.C. § 1331 (federal question jurisdiction), which the Second Circuit approved as a basis for jurisdiction for APA claims in *Sharkey*, to the Second and Fourth Causes of Action. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638-39 (2d Cir. 2005) (describing Second Circuit's "policy of liberal construction of complaints" with respect to Fed. R. Civ. Pro. 12(b)(1) motions to dismiss, in which "a colorable pleading of subject matter jurisdiction upon which the district court could . . . rel[y] to adjudicate the complaint" is sufficient to allow a complaint to survive a 12(b)(1) motion, and the policy of liberally granting leave to amend to cure jurisdictional defects under 28 U.S.C. § 1653)).

*Trudeau v. FTC,* 456 F.3d 178, 186 (D.C. Cir. 2006) ("[T]here is no doubt that § 702 waives the government's immunity from actions seeking relief other than money damages.") (internal quotations omitted). The APA permits review of IRS actions in the same manner as other government agencies. "The IRS is not special in this regard; no exception exists shielding it – unlike the rest of the Federal Government – from suit under the APA." *Cohen v. United States*, 650 F.3d 717, 723 (D.C. Cir. 2011).

### A.  Mr. Larson's Claims Can Be Reviewed Under the APA

In deciding whether a suit can be brought under the APA, courts "begin with the strong presumption that Congress intends judicial review of administrative actions." *Bowen v. Mich. Acad. of Family Physicians,* 476 U.S. 667, 670 (1986). As stated by the Supreme Court, "[f]rom the beginning 'our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.'" *Id.* (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 140 (1967) (citing cases)).

The APA defines agency actions subject to review, in relevant part, as follows:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704. Accordingly, agency actions are generally reviewable under the APA as long as (1) there has been a "final agency action," (2) this "final agency action" is not committed to agency discretion by law, and (3) Congress, subject to constitutional constraints, did not implicitly or explicitly preclude judicial review. *See Sharkey,* 541 F.3d at 87. These requirements are easily satisfied here.

## 1. The IRS's Actions Are Final Agency Actions Not Committed to IRS Discretion

First, there can be no dispute that the assessment of § 6707 penalties is a "final agency action" of the IRS, as that assessment allows it to collect penalties from Mr. Larson. *See* U.S.C. §§ 6203, 6303, 6671(a).

Second, this final agency action is not committed to the IRS's discretion by law. "[T]his restriction on the availability of APA review "'applies only in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Conyers v. Rossides*, 558 F.3d 137 (2d Cir. 2009) (quoting *Sharkey*, 541 F.3d at 91) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). Absent an express statutory prohibition on judicial review, courts have been extremely hesitant to find such a bar. And "[t]he mere fact that a statute grants broad discretion to an agency does not render the agency's decision completely nonreviewable under the 'committed to agency discretion by law' exception unless the statutory scheme, taken together with other relevant materials, provides *absolutely no guidance* as to how that discretion is to be exercised." *Beverly Health & Rehab. Servs., Inc. v. Thompson,* 223 F. Supp. 2d 73, 89–90 (D.D.C. 2002) (emphasis added) (internal citations omitted)). Here, the Code limits IRS's discretion for imposing penalties by defining tax shelters, the registration requirements for tax shelters, the persons required to register those tax shelters, as well as defining the amount of the penalty. *See* §§ 6707 and 6111. These provisions provide "a sufficiently manageable standard for judicial review." *See Starr Int'l Co., Inc. v. United States*, No. 14-cv-01593 (CRC), 2016 WL 410989, at *5 (D.D.C. Feb. 2, 2016) (considering APA claim that the IRS improperly denied benefits under the U.S./Swiss Tax Convention).

### 2. The Legislative History Shows that Congress Did Not Intend for § 6707 Penalties to Be Assessed at Such High Levels that Judicial Review Would Be Foreclosed

The "'strong presumption in favor of judicial review of administrative action'" requires that "'only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review [of administrative action].'" *Sharkey*, 541 F.3d at 84 (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *Bowen*, 476 U.S. at 670). To determine whether there is such clear and convincing evidence, courts look to the language of the statute itself, as well as "'the structure of the statutory scheme, its objective, its legislative history, and the nature of the administrative actions involved.'" *Conyers*, 558 F.3d at 143 (2d Cir. 2009).[5]

Section 6707 contains no indication that Congress intended for there not to be judicial review, or that the penalty would be so high as to effectively preclude review. As discussed above in Sections I and III, if the full-payment rule is applied but § 6707 is determined not to be divisible, Mr. Larson will be shut out of judicial review because the IRS has calculated the penalty in such a way as to make it so large that few, if any, people could ever pay it. By *administrative* action, the IRS has effectively eliminated any possibility of judicial review through refund suits.

A review of the legislative history of § 6707 establishes that Congress did not contemplate the possibility of the current situation and never intended for the penalty to be anywhere near the amounts that the IRS has assessed in this case. Until recently, § 6707 penalties were rarely imposed. There is only one judicial decision between the original enactment of §

---

[5] The Government cites several cases in which courts have held that the APA does not confer subject matter jurisdiction. *See* Gov.'s Mem. at 14 and n. 4 (citing *Conyers*, 558 F.3d 137; *Sharkey*, 541 F.3d 75; *Lunney v. United States*, 319 F.3d 550 (2d Cir. 2003)). These cases all involve claims for money damages, which is not the relief that Mr. Larson is seeking in this case.

6707 and its 2004 repeal, and in that decision, the IRS's methodology for computing the penalties is not discussed since the amounts, a total of less than $*5,000*, were agreed to by the parties. *In re Mitchell*, 109 B.R. 434 (Bankr. W.D. Wash. 1989).

Section 6707 was enacted in 1984, and provided for a penalty of an "an amount equal to the greater of (A) $500, or (B) the lesser of (i) 1 percent of the aggregate amount invested in such tax shelter, or (ii) $10,000." *See* Deficit Reduction Act of 1984, § 141, Pub. L. 98-369, 98 Stat. 494 (July 18, 1994). This $10,000 cap on penalties remained in the law until 1986, when it was removed, and the statute was amended to provide that the penalty would be "an amount equal to the greater of (A) 1 percent of the aggregate amount invested in such tax shelter, or (B) $500." *See* Tax Reform Act of 1986, § 1532, Pub. L. 99-514, 100 Stat. 2085 (Oct. 22, 1986).

In 1997, Congress amended §§ 6111 and 6707 to add a definition of confidential corporate tax shelters, and made the penalty for failure to register a confidential corporate tax shelter "an amount equal to the greater of – (i) 50 percent of the fees paid to all promoters of the tax shelter with respect to offerings made before the date such shelter is registered under § 6111, or (ii) $10,000." *See* Taxpayer Relief Act of 1997, § 2028, Pub. L. 105-34, 111 Stat. 788 (Aug. 5, 1997). Because the penalty for confidential corporate tax shelters was based on the amount of the fee paid to the promoter, and not on the aggregate amount invested in the transaction, including loan and loan premiums, it would be lower in most, if not all, cases. Accordingly, under the regulations, the penalties for promoters of tax shelters that were not confidential corporate tax shelters, like the transactions at issue here, were far higher than the penalties for promoters of this special class of tax shelters that Congress intended to combat with what it thought were enhanced penalties.

In 2004, Congress repealed the versions of §§ 6111 and 6707 discussed above, and completely overhauled the reporting and penalty regime for tax shelter transactions. Congress replaced § 6111 with a new disclosure obligation for material advisors and replaced former § 6707 with a new penalty for failure to comply with that disclosure obligation. *See* American Jobs Creation Act of 2004, § 816, Pub. L. 108-357, 118 Stat. 1418 (Oct. 22, 2004). Now, the current § 6707 penalty is $50,000 for failure to report a non-listed reportable transaction, and for listed transactions, the greater of $200,000 or 50% of the gross income derived by the material advisor, or if the transaction is a listed transaction, and the material advisor acted with intentional disregard, the penalty is 75% of the gross income derived from the transaction.[6]

The Jobs Act § 6707 penalties were intended to be *harsher* than the prior version of the statute, which strongly suggests that Congress was not aware of the impact of the IRS's method of computing the aggregate amount invested in the transaction. As stated in the legislative history,

> The Committee believes that providing a single, clear definition regarding the types of transactions that must be disclosed by taxpayers and material advisors, coupled *with more meaningful penalties* for failing to disclose such transactions, are necessary tools if the effort to curb the use of abusive tax avoidance transactions is to be effective.

P.L. 108-57, H.R. Rep. 108-548(I), 269 (June 16, 2004) (emphasis added). In addition, in his remarks at a Senate Finance Committee hearing on tax shelter reform, which led to the 2004

---

[6] Under the Jobs Act, "reportable transactions" are those identified by the IRS under regulation as having potential for tax avoidance or evasion, and "listed transactions" are reportable transactions that are the same as, or substantially similar to, transactions specifically identified by the IRS as tax avoidance transactions in published guidance. 26 U.S.C. § 6011(c). "Material advisors" are persons who provide material aid, assistance, or advice with respect to organizing, managing, promoting, selling, implementing, insuring, or carrying out any reportable transaction, and who directly or indirectly derives gross income in excess of certain threshold amounts. 26 U.S.C. § 6111(b).

amendments discussed above, Senator Chuck Grassley stated that "the Finance Committee proposal carries out this objective by beefing up the disclosure system. Specifically, the proposal *puts teeth in the penalties* for those who skirt their current law disclosure responsibilities." (emphasis added). http://www.finance.senate.gov/imo/media/doc/81667.pdf  A penalty that is a percentage of the fees paid to the material advisor, whether 50% or 75%, could not be "more meaningful" or have more "teeth" than a penalty equal to 1% of the aggregate amount invested, when that term is defined to include loans and loan premiums. The IRS's method of computing penalties under § 6707 is at odds with legislative history, which shows that Congress was not aware that the penalty could be imposed at the high level that we see with Mr. Larson's assessment. Had Congress understood that the IRS would interpret § 6707 to impose penalties of this magnitude, it either would have clarified that the IRS's method of computing penalties was incorrect or expressly made the penalties divisible. Otherwise, judicial review is effectively eliminated, and there is no indication in the legislative history that this was ever contemplated.

### B.   The Court Should Review the IRS's Actions Under the APA Because a Refund Suit Does Not Provide an Adequate Remedy to Mr. Larson

The APA applies where "no other adequate remedy in a court" exists. *See* 5 U.S.C. § 704; *Sharkey*, 541 F.3d at 84. Because Mr. Larson cannot petition the Tax Court, and he cannot afford to pay the erroneous penalties assessed, he has no adequate remedy. The Government superficially argues that Mr. Larson can simply pay and sue for a refund. The Government cites *Chatman v. United States*, No. CV 14-1244 PA (MANx), 2014 WL 6367110 (C.D. Cal. Oct. 22, 2014), in which a taxpayer claimed that he was not taxable on his earned income, and instead of paying the assessment and suing for refund, brought various alternative claims, including a claim under the APA. The plaintiff in *Chatman*, as in most income tax cases, could have challenged his assessment without payment by filing a petition in the Tax Court, or he could have paid the tax,

which was based on a percentage of his income, and brought a refund action in district court. *Chatman* does not address, and nor has any other court, the question presented here: whether refund jurisdiction is an adequate remedy where the IRS has artificially inflated the penalty assessment so that full payment is impossible? As is explained in more detail below, unless the Court finds that the full-payment rule does not apply at all or that the § 6707 penalty is divisible, a refund suit is not an adequate remedy.[7]

Courts have recognized that in certain circumstances, a refund suit may not be an adequate remedy. For example, in *Nat. Rest. Ass'n v. Simon*, 411 F. Supp. 993 (D. D.C. 1976), the district court considered a restaurant trade association's action to enjoin implementation of a revenue ruling requiring the reporting of certain employee tip income. Failure to file the report would subject the restaurant to a penalty. The district court rejected the Government's argument that the restaurants could obtain judicial review by not filing the form, being assessed the penalty, paying it, and suing for a refund since this put the restaurants "in the untenable position of either complying, with no judicial review, or of defying the government's interpretation of their legal obligations under the code . . ." *Id.* at 996.

In *Estate of Michael ex. Rel. Michael v. Lullo*, 173 F.3d 502 (4th Cir. 1999), the court found that it had jurisdiction over a mandamus action filed under 28 U.S.C. § 1361 to prevent the IRS from attempting to collect additional estate tax that had not been properly assessed within the statute of limitations for assessment. The court acknowledged that the estate could pay the

---

[7] The Government also argues, in a footnote, that the Anti-Injunction Act, which states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ," 26 U.S.C. § 7421, bars Mr. Larson's claim. *See* Gov. Mem. at p. 18, n.6. The Anti-Injunction Act does not bar a claim whether there is not an alternative remedy available. *South Carolina v. Regan*, 465 U.S. 367, 375-378 (1984). As is discussed below, both for purposes of the APA's waiver of sovereign immunity and for the Anti-Injunction Act, Mr. Larson does not have an adequate alternative remedy, and thus this suit should go forward.

tax and sue for a refund, *id.* at 509, but did not require the estate to take these steps, finding that the mandamus action was "the only reasonable and efficient method by which the Estate may defend its rights, and the Estate will be irreparably harmed without it," *id.* at 512.

*Cohen*, 650 F.3d 717, is a recent case in which a court found that it had jurisdiction over a tax dispute even though the taxpayers had not brought a refund claim. In *Cohen*, the taxpayers were challenging a procedure created by the IRS for claiming refunds for telephone excise taxes that the IRS had improperly assessed. *Id.* at 720-21. Because the only avenue for review would be for the taxpayers to comply with the procedures that they claimed were unlawful, the court found that a refund suit was not an adequate remedy. *Id.* at 733.

While these cases present different factual scenarios, taken together, they stand for the proposition that there can be unique and discrete circumstances in which the traditional refund action does not provide an adequate remedy. Mr. Larson's case presents such a situation. The IRS should not be able avoid judicial review of its actions by assessing such a high penalty that full payment is impossible.

## V.    THE COURT HAS JURISDICTION OVER MR. LARSON'S ACTION TO COMPEL THE IRS TO PROVIDE INFORMATION ABOUT ITS COLLECTION EFFORTS AGAINST CO-PROMOTERS

The Court has jurisdiction to consider Mr. Larson's cause of action to compel the IRS to provide information about amounts collected from co-promoters, which is brought under the APA and 28 U.S.C. § 1361.[8] *See We the People Foundation, Inc. v. United States*, 485 F.3d 140

---

[8] The Government has already provided some additional information in this suit. Mr. Halpert's declaration states that the IRS has collected another $4,250,000 from co-promoters. This is helpful information, but Mr. Larson still seeks full disclosure of the information about the IRS's efforts to collect from the co-promoters, the amounts that it has received, and the allocations of those payments.

(2d Cir. 2007) (APA waived sovereign immunity against First Amendment Petition Clause claim alleging that plaintiffs had a right to receive a response to various petitions).

Co-promoters of a transaction are jointly and severally liable for the § 6707 penalty. 26 C.F.R. § 301.6707-1T, A-9; IRS Nondocketed Service Advisory Review, NSAR 20032901F, 2003 WL 22205991 (July 18, 2003). The IRS issued guidance stating that it will administer § 6707 similar to the trust fund recovery penalties of § 6672. *See id.* Under § 6672, persons who are joint and severally liable are entitled to information about the IRS's collection efforts. *See* 26 U.S.C. § 6103(e)(9) (requiring IRS to provide, to any person jointly liable under § 6672, the name of any other person determined to be liable for the penalty, and whether the IRS has attempted to collect such penalty from such other person, the general nature of such collection activities, and the amount collected). The IRS should be required to provide similar information to Mr. Larson and other co-promoters so that he is able to determine his ultimate potential liability so that he can know how much "full payment" would really be or if he, in fact, has already fully paid his share. This is another instance of the IRS having it both ways - demanding that Mr. Larson make full payment for refund suit jurisdiction while at the same time, refusing to provide him information about the IRS's collection efforts against co-promoters, which is directly relevant to how much he may be required to pay.

## VI.   THE COURT HAS JURISDICTION OVER MR. LARSON'S CLAIM THAT THE § 6707 PENALTY VIOLATES THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT

The penalty here, initially over $160 million and now approximately $62 million, is an excessive fine under the Eighth Amendment of the United States Constitution because it is grossly disproportionate to the gravity of the offense. *See Austin v. United States*, 509 U.S. 602, 622-23 (1993); *United States v. Bajakajian*, 524 U.S. 321, 334 (1988). The Government

contends that sovereign immunity bars claims under the Eighth Amendment and other constitutional claims against the United States, citing *King v. Simpson*, 189 F.3d 284 (2d Cir. 1999), and *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502 (2d Cir. 1994). Gov. Mem. at 20.[9] This is not an accurate statement of the law. These cases involve claims for *money damages*, however, and not claims for equitable relief, which are not so barred. *See We The People Foundation*, 485 F.3d at 142 (collecting cases); *see also Conyers*, 558 F.3d at 150.

Mr. Larson can bring the Eighth Amendment claim on its own, but he is also bringing the claim as part of his refund action, which can go forward if the Court finds that the penalty is divisible or that the full-payment rule does not apply here, and also under the APA. *See e.g. Callister Nebeker & McCullough v. United States*, 2015 WL 5918494, at *7 (W.D. Wash. Oct. 9, 2015) (permitting Eighth Amendment claim against IRS's assessment of § 6708 penalties to go forward); *see also Moore v. United States*, No. C13-2063 RAJ, 2015 WL 1510007, at **12-14 (D. Utah April 1, 2015) (considering merits of Eighth Amendment claim challenging IRS's assessment of penalties for failure to report foreign bank account). Given the fact that the IRS has assessed an over $160 million penalty against Mr. Larson, and is still seeking to collect approximately $62 million from him, for failing to file two registration forms, there are obvious and serious Eighth Amendment concerns that need to be addressed.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully asks that this Court deny the Defendant's motion to dismiss.

---

[9] In addition, as explained in note 4, *supra*, if amending the Complaint to add other jurisdictional bases, such as 28 U.S.C. § 1331 or another provision, would cure a potential jurisdictional defect, we request leave of the Court to amend the Complaint.

Dated: June 10, 2016
      New York, New York

By: <u>s/ Megan L. Brackney</u>
Megan L. Brackney
Kostelanetz & Fink, LLP
7 World Trade Center
New York, New York 10007
Telephone: (212) 808-8100
Fax: (212) 808-8108
mbrackney@kflaw.com

NELSON MULLINS RILEY
& SCARBOROUGH LLP
By: <u>s/ Reed J. Hollander</u>
C. Wells Hall, III
100 N. Tryon Street, Suite 4300
Charlotte, NC 28202
Telephone: (704) 417-3206
Fax: (704) 377-4814
wells.hall@nelsonmullins.com

Reed J. Hollander
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: (919) 877-3816
Fax: (919) 877-3799
reed.hollander@nelsonmullins.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that service of the foregoing Plaintiff's Memorandum of Law In

Opposition to Defendant's Motion to Dismiss the Complaint has been made this 10th day of June

2016, upon defendant by ECF notification and by depositing a copy of the same in the United

States mail, in a postage pre-paid envelope, addressed to:

> Andrew E. Krause
> Assistant United States Attorney
> 86 Chambers Street
> Third Floor
> New York, New York 10007

> By: <u>s/ Megan L. Brackney</u>
> Megan L. Brackney
> Kostelanetz & Fink, LLP