UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/2016
```

------------------------------------------------------------X

JOHN M. LARSON,       :
      :
             Plaintiff,      :
      :     16-CV-00245 (VEC)
        -against-       :
      :     <u>MEMORANDUM</u>
UNITED STATES OF AMERICA,      :     <u>OPINION AND ORDER</u>
      :
             Defendant.    :

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

This case arises out of the Internal Revenue Service's ("IRS") assessment of tax penalties against Plaintiff John Larson for failure to register two tax shelters. After paying a portion of the total assessment, Larson sued the Government seeking a refund of his partial payment and an abatement of the penalties in their entirety, or, in the alternative, a determination of "the correct amount" of his liability for the penalties assessed. The Government has moved to dismiss the Complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim. For the following reasons, the Government's motion to dismiss is GRANTED.

## BACKGROUND

Section 6111(a) of the Internal Revenue Code states, in relevant part, that a tax shelter organizer "shall register the tax shelter with the [IRS] not later than the day on which the first offering for sale of interest in such tax shelter occurs." 26 U.S.C. § 6111(a) (1997–2004).[1] Absent reasonable cause, a person who is required to register a tax shelter and fails to do so is liable to pay a penalty pursuant to 26 U.S.C. § 6707(1)(a). The amount of the penalty imposed is "an

---

[1] All statutory references herein are to the versions of the statutes that were in effect during the relevant factual time period.

amount equal to the greater of—(A) 1 percent of the aggregate amount invested in such tax shelter, or (B) $500." 26 U.S.C. § 6707(a)(2) (1997–2004). The IRS interprets section 6707 to impose joint and several liability, such that "all co-promoters are each liable for 100% of the penalty, but [the IRS] ultimately collects only the full amount once." Internal Revenue Service, Non Docketed Service Advice Review on Section 6707 – Failure to Furnish Information Regarding Tax Shelters, 2003 WL 22205991 (July 18, 2003) (footnote omitted); *see also* 26 C.F.R. § 301.6707-1T (1984–2014).

In February 2011, the IRS notified Larson that he had failed to register two tax shelters: (1) the Foreign Leveraged Investment Program ("FLIP"), also called the Offshore Portfolio Investment Strategy ("OPIS"); and (2) the Bond Linked Issue Premium Structure ("BLIPS"). Complaint (hereafter, "Compl."), Dkt. 19, ¶¶ 6–7; *see also* Declaration of Michael A. Halpert (hereafter, "Halpert Decl."), Dkt. 25, ¶ 4. The IRS calculated separate penalties for the two tax shelters. Compl. ¶ 9. For the FLIP/OPIS tax shelter, Larson was assessed a penalty of $24,745,026. Compl. ¶ 9. For the BLIPS tax shelter, Larson was assessed a penalty of $135,487,056. Compl. ¶ 9.[2] In August 2011, the IRS assessed $160,232,026 in penalties against Larson for failing to register the two tax shelters. Compl. ¶ 16.[3]

In December 2012, the IRS Appeals Office reduced the total penalty due to $67,661,349 to reflect penalty payments that had been received from other taxpayers who were jointly and severally liable with Larson. Compl. ¶ 20. Larson alleges that his liability should have been

---

[2] The FLIP/OPIS tax shelter penalty was comprised of $1,397,574 for amounts invested in 1997, $17,824,803 for amounts invested in 1998, and $5,522,649 for amounts invested in 1999. Compl. ¶ 9. The BLIPS tax shelter penalty was comprised of $99,516,944 for amounts invested in 1999, and $35,970,056 for amounts invested in 2000. Compl. ¶ 9.

[3] According to Larson, the IRS erroneously included loans and loan premiums when it calculated the amounts invested in the tax shelters; had the IRS correctly calculated the penalty, according to Larson, the aggregate penalty would have been $7 million. Compl. ¶¶ 10, 11.

reduced further by additional amounts received by the Government that related to promoter liability for the two tax shelters at issue. Compl. ¶¶ 22–24. The IRS has refused Larson's requests for additional information regarding payments made by other taxpayers who are jointly and severally liable for Larson's penalty. Compl. ¶ 25.

The IRS informed Larson that to appeal his penalty assessment, he could file suit in the U.S. District Court or the U.S. Court of Federal Claims, but that, in order to continue his appeal, he was required to "pay the balance due on the assessed penalty(s)," among other required steps. Compl. ¶ 26. The IRS also informed Larson that "the Tax Court cannot consider [his] case" because Larson is "not entitled to receive a formal Notice of Deficiency for the IRC section 6707 penalty." Compl. ¶ 27.

In February 2015, Larson paid $1,432,735 towards the penalty. Compl. ¶ 29. With that payment, Larson filed a Form 843 Claim for Refund and Request for Abatement with the IRS, demanding refund of the $1,432,735 payment and a full abatement of all assessments against him. Compl. ¶ 30; Form 843 (hereafter, "Form 843"), Compl. Ex. A at 1. The IRS denied the Form 843 Claim in May 2015, stating that the penalty was "assessed based on the aggregate amount invested in the shelter" and that the penalty was "non-divisible and must be paid in full before commencing a refund suit." Compl. ¶ 31; Letter 906, Compl. Ex. B at 3. Larson did not make any further payments towards his assessed penalties.

In January 2016, Larson filed this lawsuit. He seeks a refund of his $1,432,735 payment and abatement of the section 6707 penalty pursuant to 26 U.S.C. § 7422; judicial review of the section 6707 penalty under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, *et seq.*; an order, pursuant to the APA or 28 U.S.C. § 1361, compelling the IRS to produce information regarding the amounts that co-promoters paid towards the penalty; and an award of attorney's fees.

In addition, Larson asserts that the penalty is an excessive fine under the Eighth Amendment, but he does not specify in the Complaint the relief that he seeks for the allegedly unconstitutional fine.

The Government has moved to dismiss the Complaint in its entirety. In support of its Motion, the Government submitted a declaration from the IRS in which the IRS explained that, in March 2016, it had reduced Larson's penalty assessment by $4,250,000 to account for additional payments received from "other taxpayers who were jointly and severally liable for some of the penalties with Mr. Larson." Halpert Decl. ¶ 8. The declaration further stated that future payments from other jointly and severally liable taxpayers will be posted to Larson's account. Halpert Decl. ¶ 8. To date, according to the IRS, Larson remains liable for $1,435,052 for failing to register the FLIP/OPIS tax shelter and $60,098,975 for failing to register the BLIPS tax shelter. Halpert Decl. ¶ 9.

## DISCUSSION

### A. Tax-Refund Claim

In his first cause of action, Larson seeks a refund of the payment he made and an abatement of the entire amount assessed. Compl. ¶ 35. The Government has moved to dismiss the tax-refund claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the tax-refund claim is barred by sovereign immunity. In particular, the Government argues that Larson failed to make full payment of the challenged penalty assessments, a prerequisite to suit in federal court.

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)),

*aff'd,* 561 U.S. 247 (2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014). "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

"[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Forma*, 42 F.3d 759, 763 (2d Cir. 1994) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)). Sovereign immunity thus acts as a "jurisdictional bar" to a suit against the United States, *Lunney*, 319 F.3d at 554, absent "an express statutory waiver of sovereign immunity." *United States v. Bond*, 762 F.3d 255, 259 (2d Cir. 2014); *see also EPA. v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999), *amended on reh'g*, 212 F.3d 689 (2d Cir. 2000). Any "waiver of sovereign immunity is to be construed strictly and limited to its express terms." *Lunney*, 319 F.3d at 554.

Federal district courts have jurisdiction, concurrent with the United States Court of Federal Claims, over claims for refund of "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1). Nevertheless, "other statutory provisions, as well as the Supreme Court's interpretation of § 1346(a)(1), establish a range of restrictions that qualify a taxpayer's right to bring an independent refund suit in the district court." *Forma*, 42 F.3d at 763. For example, a taxpayer must file a claim for refund or credit with the IRS prior to bringing a tax refund suit. *Id.* (discussing 26 U.S.C. § 7422(a)). In addition, the Supreme Court has interpreted

28 U.S.C. § 1346(a)(1) to "require[] full payment of the [challenged] assessment before an income tax refund suit can be maintained in a Federal District Court." *Flora v. United States*, 362 U.S. 145, 177 (1960) (*Flora II*); *see also Flora v. United States*, 357 U.S. 63, 75–76 (1958) (*Flora I*).[4]

In "a 'narrow exception'" to *Flora*'s full-payment rule, *Diversified Grp*, 2016 WL 6647769, at *5 (quoting *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993)), full payment of the challenged assessment is not required for "divisible" taxes, *i.e.*, taxes that "may be divisible into a tax on each transaction or event . . . ." *See Flora II*, 362 U.S. at 175 nn. 37–38. "If an assessment or penalty is merely the sum of several independent assessments triggered by separate transactions, it is considered divisible such that the taxpayer may pay the full amount on *one transaction*, sue for a refund for that transaction, and have the outcome of this suit determine his liability *for all the other, similar transactions*." *Diversified Grp.*, 2016 WL 6647769, at *5 (internal quotation marks and citations omitted). Excise taxes, which are assessed per item, and payroll taxes, which are assessed per employee, are divisible taxes that are exempt from the full-payment rule. *Id.*; *see also Flora II*, 362 U.S. at 175 n.37–38. But, "[w]here the liability is singular—even if the penalty base involves summing multiple figures—the assessment is not divisible." *Diversified Grp.*, 2016 WL 6647769, at *5.

The Government argues that because Larson has not paid the full amount of the penalty, he has not satisfied the full-payment rule and his tax-refund claim must be dismissed for lack of subject matter jurisdiction. Larson responds that section 6707 penalties are divisible and that, in

---

[4]     A taxpayer also may challenge a tax assessment by filing a petition with the United States Tax Court. There is no requirement to pay the challenged assessment prior to filing a claim in Tax Court. *See Flora I*, 357 U.S. at 75; *Diversified Grp.*, *Inc. v. United States*, No. 2016-1014, 2016 WL 6647769, at *4 n.3 (Fed. Cir. Nov. 10, 2016).

any event, application of the full-payment rule would violate his Fifth Amendment right to due process.[5]

The question whether section 6707 penalties are divisible has not been decided by any court in the Second Circuit. Courts that have considered the question, however, have consistently concluded that section 6707 penalties are *not* divisible and that the full-payment rule applies. *Diversified Grp.*, 2016 WL 915738, at *8 ("Because each of the [tax shelter] penalties arose from a single event, they are not divisible." (internal alterations omitted));[6] *Pfaff v. United States*, No. 14-cv-03349, 2016 WL 915738 (D. Colo. Mar. 10, 2016) ("plaintiff has failed to establish that section 6707 penalties are exempt from the full-payment rule").[7]

This Court, too, concludes that section 6707 penalties are not divisible. In relevant part, section 6707(a) provides, "If a person . . . fails to register such tax shelter on or before the date described in section 6111(a)(1) . . . such person shall pay a penalty with respect to such

---

[5]     Larson cites a string of cases in an attempt to demonstrate that "[l]ower courts' attempts to apply [the full-payment rule] to cases involving penalties and interest have been all over the board." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint (hereafter, "Opp. Br."), Dkt. 26, at 6, 6 n.2. It is unclear, however, why Larson is citing these cases. Those cases distinguished between prepayment of the *principal* amount assessed and prepayment of *interest* (and penalties, if any). *See, e.g.*, *Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993) (prepayment of only the principal amount assessed was required when the plaintiff disputed only the principal amount, and not the interest and penalties). Larson challenges the total *principal* amount assessed. Although the principal amount owed is a section 6707 "penalty," not one of the cases cited by Larson held that a taxpayer can avoid prepayment of the challenged tax principal. In addition, not one of the cases on which Larson relies concerns section 6707 penalties, and several of them are from lower courts in the Federal Circuit, which recently decided *Diversified Group Inc. v. United States*, No. 2016-1014, 2016 WL 6647769 (Fed. Cir. Nov. 10, 2016) (applying the full-payment rule to section 6707 penalties).

[6]     Larson attempts to distinguish *Diversified Group Inc. v. United States*, No. 2016-1014, 2016 WL 6647769 (Fed. Cir. Nov. 10, 2016), on the ground that his Complaint "disputes the method used by the IRS to calculate the 'aggregate amount invested' and alleges that Mr. Larson has made full payment (considering payment from co-promoters) if the correct method of calculation had been applied by the IRS." Letter, Dkt. 29 (Nov. 18, 2016). The fact that Larson disputes the IRS's calculation, however, does not alter the applicability of the full-payment rule.

[7]     Robert Pfaff, the plaintiff in *Pfaff*, and Larson were partners at Presidio Growth/Presidio Advisors, a tax shelter boutique. *Pfaff v. United States*, 989 F. Supp. 2d 301, 301 (S.D.N.Y. 2013); *see also* Form 843 at 3–4. The penalties at issue in *Pfaff* also involved the failure to register the FLIP/OPIS and BLIPS tax shelters. Declaration of Robert K. Schroeder, Dkt. 19-1, ¶ 4, *Pfaff v. United States*, No. 14-cv-03349 (D. Colo. April 15, 2015).

registration . . . ." The liability for the section 6707(a) penalty, therefore, is triggered by a single event—the person's "fail[ure] to register" the tax shelter by the required date. The failure to register is a "single act" and "a single source of liability, regardless of how many individuals or transactions are involved in the tax shelter. Liability cannot be sub-divided beyond this." *Diversified Grp.*, 2016 WL 915738, at *6; *see also Pfaff*, 2016 WL 915738, at *3 ("a violation of 26 U.S.C. § 6111, which would subject an individual to penalties pursuant to 26 U.S.C. § 6707, is predicated on a single event, namely, failing to register the underlying tax shelter.").

Larson insists that the penalties are divisible because they "are based on an aggregation of amounts invested in separate transactions," Opp. Br. at 12, and therefore proposes to divide Larson's penalty "by year and by investment," Transcript of Oral Argument (hereafter, "Tr.") at 18:3–4 (Dec. 16, 2016). Larson points out, for example, that to calculate the amount of the penalty, the IRS was required pursuant to 26 U.S.C. § 6707(a)(2)(A) to consider "the aggregate amount invested in [the] tax shelter." This argument is illogical. Although the *amounts* of Larson's penalties were calculated based on an aggregation of the amounts invested in each individual tax-shelter transaction, *see* Compl. ¶ 7, the question of how the penalty is *calculated* is different from the question of how *liability* for the penalty is incurred. The fact that individual transactions are aggregated to calculate the amount of the penalty does not mean that the basis for the penalty is itself an aggregate act.

Larson's suggestion that section 6707 penalties are divisible because they are similar to penalties imposed under 26 U.S.C. § 6672 also fails. Section 6672 imposes a penalty if an employer fails to withhold federal taxes from wages as required. *See Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir. 1993) (discussing 26 U.S.C. § 6672). The amount of the penalty is based on "the total amount of the tax evaded." 26 U.S.C. § 6672(a). Several courts have concluded that section 6672 penalties are divisible, so that payment of the assessment associated with a single

employee's unpaid withholding tax is sufficient prior to filing a refund suit. *Vir v. United States*, 125 Fed. Cl. 293, 300 (Fed. Cl. 2016) (collecting cases); *see also Pfaff*, 2016 WL 915738, at *3 (citing *Fidelity Bank*, *N.A. v. United States*, 616 F.2d 1181, 1182 n.1 (10th Cir. 1980)); *Boynton v. United States*, 566 F.2d 50, 52 (9th Cir. 1977). The divisibility exception applies to section 6672 penalties because section 6672 assessments represent an accumulation of separate assessments for each employee from whom taxes were not properly withheld; each failure to withhold is a separate punishable event. *Boynton*, 566 F.2d at 52; *see also Fidelity Bank*, 616 F.2d at 1182 n.1 (citing *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971)); *Diversified Grp. v. United States*, 123 Fed. Cl. 442, 451 (Fed. Cl. 2015). Section 6707 penalties, on the other hand, do *not* represent an aggregate of separate assessments. Section 6707 penalties are imposed based on a single event: the failure to register the tax shelter by the required date. Accordingly, for purposes of the full-payment rule, penalties under section 6707 are not analogous to penalties under section 6672.

Indeed, at oral argument, Larson did not dispute that the failure to register a tax shelter was "only one act," or "one act per shelter," Tr. at 17:22–23; rather, Larson seeks to limit the applicability of the full-payment rule to his particular circumstances. In a due process challenge to the application of the full-payment rule, Larson argues that the full-payment rule violates "the Fifth Amendment where there is no alternative forum having jurisdiction over pre-payment challenges to such penalties and where an individual does not have the financial means to pay the penalties in full." Opp. Br. at 7. Foreclosed from review in Tax Court,[8] Larson argues that because

---

[8] Although Tax Court does not require prepayment of a challenged tax or assessment, Larson's penalty is not a "deficiency" and therefore is not reviewable in Tax Court. *See Smith v. C.I.R.,* 133 T.C. 424, 429–30 (2009) (Tax Court "lack[s] jurisdiction to redetermine [section 6707] penalties" because Tax Court "has never exercised jurisdiction over an assessable penalty that was not related to a deficiency.").

he cannot pay the penalty, and he cannot seek review for his claim without paying the penalty, the imposition of the full-payment rule violates his Fifth Amendment right to due process.[9]

Larson argues that the Supreme Court in *Flora I* and *Flora II* never intended for the full-payment rule to apply in circumstances in which Tax Court review is unavailable and the challenged penalty amount is unaffordable to the taxpayer. Larson's reading of *Flora I* and *Flora II* strains to find due process arguments where none exists. In reviewing the legislative history of 26 U.S. § 1346(a)(1) and the legislative history that led to the creation of Tax Court, the Supreme Court noted that Congress created the Tax Court as a prepayment forum to ameliorate "the hardship of prelitigation payment." *Flora I*, 357 U.S. at 74, 75; *Flora II*, 362 U.S. at 158. But it is clear that Congress created the Tax Court out of legislative grace, not because it was a constitutionally-required response to the full payment rule. *See Flora I*, 357 U.S. at 75; *Flora II*, 362 U.S. at 158. *Flora I* and *Flora II* held that, in district court, a taxpayer must "pay first and litigate later," and Larson points to no authority that supports his argument that the unavailability of the Tax Court vitiates the full-payment rule in district court. Carving a "when Tax Court is unavailable" exception into the full-payment rule would subvert the full-payment rule's purpose in "promot[ing] the smooth functioning of [the tax litigation] system." *See Flora II*, 362 U.S. at 647. Although this Court is sympathetic to Larson's circumstances, this Court declines to recognize such an exception to well-settled jurisdictional limits.

Courts of appeals have also declined to carve a "hardship" exception to the full-payment rule for taxpayers foreclosed from Tax Court review. For example, the Seventh Circuit stated in *Curry v. United States*, 774 F.2d 852 (7th Cir. 1985), that the fact that the *Flora* taxpayer had a

---

[9]     Larson did not assert a Due Process claim in his Complaint, but he makes arguments based on the Due Process Clause in opposing the Government's motion to dismiss.

choice between the Tax Court and the district court, and the *Curry* plaintiffs did not have that choice was a distinction without a difference. 774 F.2d at 854 (citing *Flora I*, 357 U.S. at 75–76 ("[w]here the time to petition [the tax] court has expired, *or where for some other reason a suit in the District Court seems more desirable*, the requirement of full payment may in some instances work a hardship")). The Seventh Circuit noted that creating a hardship exception would be a task for Congress, not the courts, and that a hardship exception would undermine the full-payment rule's policy interests by "endanger[ing] the 'public purse' and disrupt[ng] the smooth functioning of the tax system." *Id.* at 855. The Federal Circuit similarly concluded that the argument that the full-payment rule does not apply where Tax Court lacks jurisdiction is an argument "without merit." *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) (discussing review of section 6166 estate taxes). The Second Circuit also has acknowledged that the full-payment rule applies even though "taxpayers with patently meritorious refund claims can be tripped up procedurally and be left without a remedy." *Forma*, 42 F.3d at 763.

The Supreme Court specifically acknowledged that the full-payment rule "may in some instances work a hardship," but concluded that any amelioration of that hardship is for Congress, not the Courts. *Flora I*, 357 U.S. at 75–76; *see also Curry*, 774 F.2d at 854 (a hardship exception to the full-payment rule "is a matter for legislative, not judicial remedy."). Although full payment of Larson's challenged assessment may be prohibitively costly, courts have consistently rejected the argument that application of the full-payment rule deprives a taxpayer of "fundamental due process" in circumstances where the taxpayer is unable to pay the full amount. *See Johnston v. Comm'r*, 429 F.2d 804, 806 (6th Cir. 1970) ("While we appreciate that the payment of taxes as a precondition to sue for their return places a burden on the taxpayer, we do not believe that it is such as to deny him the fundamental processes of fairness required by the Fifth Amendment of the United States Constitution."); *see also Pfaff*, 2016 WL 915738, at *4 (plaintiff's argument that

required prepayment of approximately $67.6 million violated his due process rights did not provide a basis for subject matter jurisdiction).

Because this Court concludes that Larson is required to pay the assessed penalties in full prior to bringing suit in federal district court, his tax-refund claim is DISMISSED for lack of subject matter jurisdiction.[10]

## B. Administrative Procedure Act Claim

Next, Larson brings a claim for judicial review under the APA, arguing that the IRS's penalty assessment and denial of Larson's refund claim were arbitrary, capricious, and an abuse of the IRS's discretion. The Government moves to dismiss the APA claim for lack of subject-matter jurisdiction and failure to state a claim.

"Although the APA does not itself confer subject matter jurisdiction, the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that 'arises under' a 'right of action' created by the APA."[11] *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008) (citations omitted); *see*

---

[10]     Larson attempts to side-step the jurisdictional inquiry by arguing, "In order to determine whether this Court has jurisdiction, *i.e.* whether Mr. Larson has made a full payment, the Court must first decide whether the IRS properly computed the penalty." Opp. Br. at 3. According to Larson, the IRS incorrectly calculated the penalty assessment; because the IRS erroneously included the value of loan and loan premiums in the penalty calculation, the penalty was "inflated . . . from approximately $7 million to approximately $160 million." Compl. ¶¶ 10–11. If the penalty is $7 million, Larson argues, then he "has made full payment because his $1,432,735 payment, plus the $96,820,667 collected from the other co-promoters, would more than cover the assessment." Opp. Br. at 1.

        Larson's argument impermissibly conflates the merits of the challenged assessment with this Court's jurisdiction to review the assessment at all. Larson does not dispute that the amount of the IRS assessment is $160,232,026. Compl. ¶ 16. Before Larson may challenge the $160,232,026 assessment, he must make full payment of the challenged assessment. *See Flora II*, 362 U.S. at 177; *see also Moorehead v. IRS.*, No. 88 CIV. 3083 (ELP), 1989 WL 46580, at *2 (S.D.N.Y. Apr. 24, 1989) (dismissing tax-refund suit where full payment of the assessment had not been made and rejecting plaintiffs' arguments that "go[] to the merits of their claim that the deficiency assessment . . . was incorrect."). Interpreting the full-payment rule in the manner in which Larson suggests would eviscerate the Supreme Court's mandate that a taxpayer must "pay first and litigate later." *See Flora II*, 362 U.S. at 168. Because this Court lacks jurisdiction to adjudicate Larson's claim, his request for jurisdictional discovery, *see* Opp. Br. at 3 and Tr. 25:8–21, is DENIED.

[11]     Larson did not assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 in his Complaint, but he requests leave to amend his Complaint to include 28 U.S.C. § 1331 as a basis of jurisdiction. *See* Opp. Br. at 13 n.4. For the reasons discussed in this section, however, even if Larson were to include an assertion of § 1331 jurisdiction in his Complaint, judicial review would not be available for Larson's APA claim.

*also Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988) ("it is common ground that if review

is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331"). The APA

waives sovereign immunity for cases seeking "relief other than money damages," such as

declaratory and injunctive relief, but the APA does not waive sovereign immunity for money-

damages claims. 5 U.S.C. § 702; *Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994).[12]

     Under the APA, a "person suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

judicial review thereof." 5 U.S.C. § 702. Although there is a "strong presumption that Congress

intends judicial review of administrative action," that presumption may be overcome upon "a

showing of clear and convincing evidence of a contrary legislative intent should the courts restrict

access to judicial review" of the agency action. *Bowen v. Mich. Academy of Family Physicians*,

476 U.S. 667, 670–71 (1986) (internal quotation marks and citation omitted).[13] "[M]any threshold

---

[12]     Larson alleges that he "brings this action to recover his $1,432,735 penalty payment and abate the asserted penalty in its entirety for the reasons stated in the Claim for Refund, or in the alternative, for a determination of (a) the correct amount of § 6707 penalty, if any; and (b) the correct amount of credit to be applied to any § 6707 penalty from payments made by co-promoters, co-organizers, or others." Compl. ¶ 32. Larson's desire to recover the $1,432,735 he already paid is a claim for monetary relief that does not fall within the APA's waiver of sovereign immunity. *See* 5 U.S.C. § 702. To the extent Larson seeks injunctive or declaratory relief, *see* Compl. ¶ 32, that relief might be barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a) ("no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person"), and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("*except with respect to Federal taxes* . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). Although the Anti-Injunction Act does not apply "to actions brought by aggrieved parties for whom [Congress] has not provided an alternative remedy," *see South Carolina v. Regan*, 465 U.S. 367, 378 (1984), as discussed *infra*, Congress has provided an alternative remedy for Larson's requested relief: a tax-refund suit. Larson cannot rely upon the APA to obtain injunctive or declaratory relief that is barred by the Anti-Injunction Act or the Declaratory Judgment Act. *See Chatman v. United States*, No. CV 14-1244 PA (MANx), 2014 WL 6367110, at *3 (C.D. Cal. Oct. 22, 2014) ("Even if Plaintiff withdrew the claim for monetary damages, Plaintiff cannot rely upon the APA to obtain injunctive and declaratory relief that is prohibited by the Anti–Injunction Act, 26 U.S.C. § 7421(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201. The APA does not provide the Court with jurisdiction.").

[13]     "Congress evinces such intent through a statute's 'express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Paganini v. U.S. Dep't of Agric. Sec'y of Agric.*, No. 12 CV 4615 VB, 2012 WL 6822150, at *3 (S.D.N.Y. Dec. 10, 2012) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984)).

limitations" also preclude judicial review under the APA. *Sharkey*, 541 F.3d at 84. Judicial review, for example, is *not* available under the APA "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

The APA provides for judicial review of only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As explained by the Supreme Court, "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." *Bowen*, 487 U.S. at 903. Therefore, "[e]ven if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1815 (2016) (citing 5 U.S.C. § 704). "An existing review procedure will therefore bar a duplicative APA claim so long as it provides adequate redress." *Clark Cty. Bancorp. v. U.S. Dep't of Treasury*, No. 13-632 (JEB), 2014 WL 5140004, at *8 (D.D.C. Sept. 19, 2014).

The Government correctly contends that Larson *does* have another adequate remedy in court: a tax-refund claim pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1).[14] Larson, too, recognized the tax-refund suit as an adequate avenue for relief when he filed his Complaint, which asserts a tax-refund claim pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1346(a)(1) as its first cause of action. *See* Compl. ¶¶ 34–38. Congress created a statutory scheme through which Larson can seek refund and abatement of his section 6707 penalty. *See* 26 U.S.C. § 7422; 28 U.S.C § 1346. Larson's ability to seek relief through this statutory scheme forecloses judicial review via

---

[14] For the purposes of its Motion, the Government does not contest that the IRS assessment is a "final agency action" that is not committed to IRS discretion. Reply Memorandum of Law of Defendant United States of America in Further Support of Its Motion to Dismiss the Complaint, Dkt. 27, at 6 n.4.

the APA for the same relief. *See Paganini*, 2012 WL 6822150, at *3 ("Simply put, separate APA review of matters made reviewable by [statute] would be inconsistent with [that statute's] intricate legislative scheme, which provides a meaningful opportunity to challenge the Secretary's actions."); *see also Clark Cty.*, 2014 WL 5140004, at *9 ("At the end of the day, [Plaintiff] wants tax money from Treasury Defendants, and the congressionally specified avenue to recover such sums [through a tax-refund suit] is more than adequate to redress the wrongs it alleges."); *Chatman*, 2014 WL 6367110, at *3 (concluding that the court did not have jurisdiction over the APA claim where "Plaintiff seeks monetary damages and has an adequate remedy at law if he elected to file a refund suit or an administrative claim for refund"); *Pudlin v. Office for (Not of) Civil Rights of the U.S. Dep't of Educ.,* 14 Civ. 10274 (AT), 2016 WL 2892034, at *3 (S.D.N.Y. May 9, 2016) (concluding that Plaintiff's APA claim was not justiciable because the agency action was a discretionary act, and "Plaintiff has an adequate, alternate remedy: a disability discrimination suit").

Larson insists that the tax-refund suit is not an adequate remedy because he "cannot petition the Tax Court, and he cannot afford to pay the erroneous penalties assessed." Opp. Br. at 19. Although the Court is not unsympathetic to Plaintiff's position, his arguments are not persuasive. As discussed above, full payment of a challenged assessment is a jurisdictional prerequisite to filing a tax-refund suit. *Flora I*, 357 U.S. at 75–76; *Flora II*, 362 U.S. at 177. Larson attempts to avoid *Flora*'s restriction of federal court jurisdiction by dressing up his tax-refund suit as an APA claim, but his APA claim "is a refund suit in everything but name." *See Clark Cty.*, 2014 WL 5140004, at *9. This Court declines to participate in that masquerade.[15]

---

[15]    Larson cites several cases in support of his argument that a tax-refund suit is not an adequate remedy, but these cases are not factually analogous, as Larson himself admits. Opp. Br. at 21 ("these cases present different factual scenarios"); Tr. at 24:12 ("none of [these cases] speak to 6707"). *See Nat. Rest. Ass'n v. Simon*, 411 F. Supp. 993,

Finally, Larson argues that the legislative history of section 6707 provides no indication that Congress intended for judicial review of the penalty to be unavailable in some circumstances. But the legislative history of section 6707 is irrelevant to the question of whether the APA is an instrument to obtain judicial review. In the APA, Congress expressly authorized judicial review of a "final agency action *for which there is no other adequate remedy in a court,*" *see* 5 U.S.C. § 704 (emphasis added). Because Larson has an adequate alternative judicial remedy, the Government's motion to dismiss the APA claim is granted.

## C. Claim to Compel Information from the IRS (APA and Mandamus)

Although the statute does not expressly discuss the allocation of liability for section 6707 penalties among co-organizers (also called co-promoters) of a tax shelter, the IRS has interpreted 26 U.S.C. § 6707 to impose joint and several liability. 26 C.F.R. § 301.6707-1T at A-9 (explaining that the co-participants in the organization of the tax shelter "are jointly and severally liable"). Accordingly, as a result of payments received from co-promoters, the IRS reduced Larson's outstanding penalty by approximately $92.57 million in 2012 and by another $4.25 million in 2016. Compl. ¶ 20; Halpert Decl. ¶¶ 7–8. Larson claims that the "IRS should be compelled, pursuant to [the APA] and/or [the federal mandamus statute,] 28 U.S.C. § 1361, to provide Mr. Larson with information about the amounts of the § 6707 penalty that it has collected from all co-promoters." Compl. ¶ 53. The Government moves to dismiss Larson's claim to compel information from the IRS, arguing that no legal basis exists for granting Larson's requested relief.

---

996 (D.D.C. 1976) ("plaintiffs are not faced with the usual assessment process . . . . Significantly, no sum is at issue in any facet of the requirement, and consequently the ordinary options of refund litigation are not available to plaintiffs."); *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 510–11 (4th Cir. 1999) (refund suit was an inadequate remedy when IRS's attempt to assess taxes was "manufactured" and "transparently baseless"); *Cohen v. United States*, 650 F.3d 717, 731–32 (D.C. Cir. 2011) ("[T]his is not a refund suit—Appellants are seeking equitable relief rather than 'recovery of any internal revenue tax.' 26 U.S.C. § 7422(a). Therefore[,] allowing Appellants' APA suit to proceed does not 'duplicate existing procedures for review of agency action.' *Bowen v. Mass.*, 487 U.S. 879, 903 (1988).").

As an initial matter, the relief that Larson requested in his Complaint was for "information about the *amounts* of the section 6707 penalty that [IRS] has collected from all co-promoters." Compl. ¶ 53 (emphasis added). The IRS, however, already has informed Larson that it has received approximately $96.82 million from other jointly and severally liable taxpayers. Halpert Decl. ¶¶ 7–8. The IRS also has attested that Larson will be credited with any future payments from such taxpayers. Halpert Decl. ¶ 8. Larson has acknowledged that the Government "has already provided some additional information" and that the additional information is "helpful," Opp Br. at 21 n.8; however, in opposing the Government's Motion, Larson appears to have expanded his request for information to include "full disclosure of the information about the IRS's efforts to collect from the co-promoters, the amounts that it has received, and the allocations of those payments." Opp. Br. at 21 n.8; *see also* Tr. at 61:9–10 (requesting information regarding "who has paid, how much they have paid, and how it was applied").

Although Larson cites the APA and the mandamus statute in support of his claim, relief would be available under the APA and via mandamus only if the IRS's failure to provide Larson with the requested information were unlawful. *See* 5 U.S.C. § 706(1)–(2) (APA authorizes a reviewing court to "compel agency action *unlawfully withheld or unreasonably delayed*; and hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, *or otherwise not in accordance with law*" (emphases added)); 28 U.S.C. § 1361 (district courts have jurisdiction "to compel an officer or employee of the United States or an agency thereof to perform *a duty owed to the plaintiff*" (emphasis added)). Larson fails to allege why the IRS's failure to provide him with whatever specific information he is seeking is unlawful.

Larson's sole argument in support of his claim to compel information is that because section 6672 penalties, which also are imposed jointly and severally, are administered similarly to section 6707 penalties, the authorization in 26 U.S.C. § 6103(e)(9) for the disclosure of

information about section 6672 penalties also is applicable to information about section 6707 penalties. Larson is correct that penalties under sections 6672 and 6707 are both imposed jointly and severally and that the IRS has "look[ed] to the cases decided under section 6672 for guidance in determining the rights and responsibilities of the parties in cases of joint and several liability for the section 6707 promoter penalty." Internal Revenue Service, 2003 WL 22205991. The IRS's analogy to section 6672 penalties, however, was made in the context of "how the promoter penalty under section 6707 is to be collected in the (fairly typical) case of multiple promoters of the same transaction." *Id.* The question of how to allocate and collect a penalty is different from the question of whether a taxpayer is entitled to require the IRS to disclose information; the fact that an analogy to section 6672 is helpful on the allocation question does not necessarily mean that the same analogy is helpful (or even correct) relative to the information-disclosure question.

Larson's citation to 26 U.S.C. § 6103(e)(9) as a basis for disclosure of section 6707 penalty information undercuts his own argument. Despite the "[g]eneral rule" that "[r]eturns and return information shall be confidential," 26 U.S.C. § 6103(a), Congress listed "[d]isclosure of certain information where more than 1 person [is] subject to penalty under section 6672" as a category for which "[d]isclosure to persons having material interest" was permissible. 26 U.S.C. § 6103(e)(9). If Congress had intended to allow for the disclosure of such information for section 6707 penalties, it easily could have done so. Congress, however, did not do so, and Larson has not pointed to any other statutory or legal authority for his requested relief.[16]

---

[16]     At oral argument, Larson also cited 26 U.S.C. § 6103(h) as a basis for finding that disclosure of information was appropriate. Tr. at 59:19–21. That provision authorizes disclosure "to certain Federal officers and employees for purposes of tax administration," which does not apply to Larson's circumstances.

Larson's claim to compel the IRS to give him information relating to payments from others who are jointly and severally liable is therefore DISMISSED for failure to state a claim.

## D. Eighth Amendment Claim

In his final cause of action, Larson claims that the section 6707 penalty is an excessive fine in violation of the Eighth Amendment of the U.S. Constitution, but he fails to specify in the Complaint the relief he seeks.[17] The Government moves to dismiss the Eighth Amendment claim on sovereign-immunity grounds. In opposing dismissal, Larson appears to argue that his claim is for equitable relief (and not money damages, which would be barred by sovereign immunity) and that he "can bring the Eighth Amendment claim on its own, but he is also bringing the claim as part of his refund action." Opp. Br. at 23.

As an initial matter, it is not clear that this Court has jurisdiction over the Eighth Amendment claim. Neither party appears to dispute that in suits for money damages, sovereign immunity bars a constitutional claim against the United States absent a Congressional waiver of that immunity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent."). In opposing the motion to dismiss, Larson characterizes his claim as one for equitable relief; however, as discussed in note 12, *supra*, to the extent Larson seeks injunctive or declaratory relief relating to his section 6707 penalty, his request appears to be barred by the Anti-Injunction Act or the Declaratory Judgment Act. Furthermore, Larson cannot "bring[] the

---

[17]     At oral argument, Larson confirmed that he was not seeking money damages, but that his Eighth Amendment claim was "that the penalty is an excessive fine under the Eighth Amendment" and that the penalty statute therefore was unconstitutional as applied to Larson. Tr. at 34:2–5, 19–24 (Ms. Brackney: "[O]ne of our claims is that the penalty is an excessive fine under the Eighth Amendment." Court: "And therefore the statute is unconstitutional?" Ms. Brackney: "Yes, or at least as it is applied here.").

[Eighth Amendment] claim as part of his refund action" because, for the reasons stated above, this Court does not have subject matter jurisdiction over his tax-refund claim.[18]

In any event, even if this Court had jurisdiction to review Larson's Eighth Amendment claim, that claim does not survive the Government's motion to dismiss. "To survive a 12(b)(6) motion to dismiss, a 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Drimal v. Tai,* 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and we are not bound to accept as true a legal conclusion couched as a factual allegation." *Brown v. Daikin Am. Inc.,* 756 F.3d 219, 225 (2d Cir. 2014) (internal quotations marks and citations omitted). In evaluating whether an Eighth Amendment claim is plausibly alleged, "a monetary penalty will be considered excessive within the meaning of the Eighth Amendment when there is a lack of proportion between the gravity of the offense and the harshness of the penalty." *United States v. Milbrand*, 58 F.3d 841, 845 (2d Cir. 1995) (discussing Eighth Amendment analysis for punishments other than *in rem* civil forfeitures).

Even when construed in the light most favorable to Larson, Larson's allegations in support of his excessive-fine argument do not state a plausible Eighth Amendment claim. Larson pleads only that the penalty is "grossly disproportionate to the gravity of the alleged misconduct: Mr. Larson's failure to file two tax shelter registration forms." Compl. ¶¶ 46–47. The allegation that

---

[18]    At oral argument, Larson cited *Callister Nebeker & McCullough v. United States*, No. 2:14-cv-919-TC, 2015 WL 5918494 (D. Utah Oct. 9, 2015) and *Moore v. United States*, No. C13-2063 RAJ, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015), which he also cited in his briefs, in support of his argument that the Court could entertain his Eighth Amendment claim. The court in *Callister Nebeker*, however, considered the plaintiff's Eighth Amendment argument after concluding that the court had subject matter jurisdiction over the case. *See Callister Nebeker*, 2015 WL 5918494, at *5 n.7. And in *Moore*, the court's subject matter jurisdiction did not appear to be disputed by either the parties or the court. *See Moore*, 2015 WL 1510007, at *3 (Bank Secrecy Act case).

the penalty is "grossly disproportionate," however, is a conclusory assertion that does not state a plausible claim for relief. *See Brown*, 756 F.3d at 225. Therefore, the Eighth Amendment claim is DISMISSED for lack of subject matter jurisdiction and for failure to state a claim.

## CONCLUSION

For the foregoing reasons, this Court GRANTS the Government's motion to dismiss the complaint in its entirety. Because this Court lacks subject matter jurisdiction over the case, this Court DENIES Larson's request for discovery relating to the penalty payments made by co-promoters. Because Larson is not the "prevailing party" in this case, this Court also DISMISSES Larson's claim for attorney's fees. *See* 26 U.S.C. § 7430 (awarding costs and fees to the "prevailing party"). The Clerk of Court is respectfully directed to close the case.


**SO ORDERED.**

**Date:  December 28, 2016**          _____
          **New York, New York**                    **VALERIE CAPRONI**
                                                     **United States District Judge**